March 20th, 1816, the president pronounced the following as the court’s opinion.
It seems to the court here that the partition of the lands in this case, was made under an interlocutory decree, which proceeded on the principle, that the sale by Robert Carter to Semple was null and void ; and the lands embraced by that sale were included in the division, in the same manner as if the sale had never been made. If the sale to Semple were now to be regarded as null and void, the partition, as first made, would undoubtedly be confirmed by this court, as there is no evidence of any inequality. That principle, however, was abandoned by the final decree ; and this court thinks that it was correctly abandoned, under the particular circumstances of the case. The chancellor nevertheless has confirmed the partition made as aforesaid, with the following alteration ;— in lieu of the lands sold to Semple, and which had been allotted to Charles Carter, he has decreed to (he said Charles Carter's representatives the purchase money which Robert Carter had received therefor, with interest thereon.
The first question-to be decided is, whether the partition, as thus modified, shall be established ?
The question should be considered, as if Robert Carter were now alive and before this court; and it will be much simplified by recollecting that all the other parties assent to the'partilion, as made by the final decree ; and of course, that it will not be disturbed, unless it be shewn to he improper, in relation to him ; nor will it be sufficient even for fowl-or his representatives to shew that some other mode of division might originally have been more regular ; for the petition having been so long acquiesced in, and acted on by all others, he will not now be permitted to impeach it, but on the ground of its being uniust or illegal.
*115 The company having agreed to sanction the sale of the land which Robert Carter had made to Semple, they had a right to consider as their's the money which he had received for the land ; and being the proceeds of the sale thereof, they had a right to consider it, in the division, as land; and to allot it, accordingly, to one, or to divide it among all the partners. The substitution of the money for land cannot be unjust or illegal, as to him by whose act the substitution became necessary ; — and cannot therefore afford any just ground for objection to the partition. The court perceives no impropriety in the allowance of interest on the price of the land. But if it were disposed to doubt its propriety, on general principles, the conduct of Robert Carter would remove that doubt, — for, in the very exception on which his counsel so much relies, he expressly declares his willingness to account for the interest.
The interest is not to be regarded as profits on land, but, when added to the principal, is to be regarded as representing and substituting the value of Semple's ¡and in the partition. Considered in this view, the partition could be objected to, on the ground of inequality only. The only evidence on this point is that furnished by Robert Carter himself; that lot, or portion, to which this money with its interest was attached, and of which it constituted a part, was offered to him ; blithe rejected it, on the sole ground of its being of inferior value: When, therefore, it has been assigned to another, who receives it without objection, it would not be permitted to Robert Carter to say that it was of loo great value.
A partition which is thus just and proper, in relation to all the partners of the company, not excepting even Robert Carter himself, cannot be set aside by considerations which relate to a contest, between Ms representatives only.
That contest is as to the fund out of which the money decreed against Robert Carter's estate shall be paid. His son and executor George Carter, who is also the residuary legatee, insists that it should be charged on all the real estate of the said Robert Carter, in Virginia ; or that, if it be not so chargeable, it ought to fall, at least, on his interest in the lands of the Frying-pan company. The first position can prevail only on the idea of the validity of the contract, to that effect, between Robert Carter and his children, as contended for by the- *116 counsel of the appellant. But that was merely a plan proposed for the division of Robert Carter’s lands in Virginia, which . was never carried into a contract. A Mr. Queenlam, who married a daughter of Robert Carter, after that plan had been , proposed, and after she bad signed a paper purporting to be an acceptance of that plan, laid claim to that portion which was to have been allotted to her, and forbade a division of it among her children, as wished by Robert Carter. In a letter from Robert Carter to his son, the present appellant, shortly before his death, and in direct reference to this controversy with Queenlam, he gives a detailed account of all the proceedings in relation to the proposed plan, for the purpose of shewing that it was never executed. He expressly says that the plan was rejected by him, and that neither Mr. Maund, nor any other person, ever proposed a second. It is very evident also, from another circumstance, that he never considered the proposed plan, as having been carried into a contract:— The plan proposed contemplated^he Frying-pan lands, whereas the plan executed expressly excludes them : — moreover, instead of a joint bond and mortgage (as contemplated by the plan proposed,) that adopted was to convey the property by deed, subject to such provisions and conditions only, as the deeds contained ; among which, the payment of debts is not to be found. The claim of the appellant, therefore, so far as it depends on this alleged contract, falls to the ground.
Nor does the court perceive any reason for charging this money on Robert Carter’s portion of the company lands. These lands passed by his will, which intimates no intention thus to charge them.
This money is, as to Robert Carter, a debt due to the company ; and the persona! estate, when competent to the purpose, is the proper fund for the payment of debts. In addition to which, the personal estate is, by this will, expressly charged with such payment.
But the court considering that the appellees ought not to be relieved in equity, but on the terms of their acquiescing in the leases, and agreements of lease made by Robert Carter before the 26th day of January, 1778, the date of his letter to Mann Page and others; (especially, as they claim a share of the rents arising from such leases and agreements ;) is of opinion, that *117 the several parties should hold the lands severally allotted to them, subject respectively to all such leases, or agreements of lease, as they would be subject to, if they had been the solo property of Robert Carter : and that liberty should be reserved to the defendants, representatives of Robert Carter, to resort to the chancellor for specific execution, if the tenants, or persons claiming under such agreements, shall proceed against them, or either of them, for damages out of the estate of Robert Carter, on such agreements.
The court therefore reverses so much of the decree of the chancellor as contravenes this opinion, and, affirming the residue, remand? the cause to be finally proceeded bs. according to the principles hereby declared.