42 U.S. 1
 1 How. 1
 11 L.Ed. 25
 WILLIAM H. WILLIAMS, PLAINTIFF IN ERROR,
v.
JAMES ASH, DEFENDANT IN ERROR.
 January Term, 1843
 
 1
 IN error to the Circuit Court of the United States for the county of Washington, District of Columbia.
 
 
 2
 NOTE.—The report of this case was accidentally omitted by the late reporter, and this report has been furnished by him.
 
 
 3
 In the Circuit Court of the county of Washington, James Ash, a negro, presented a petition, stating that he was entitled to his freedom, and that he is held in custody and confined in the private jail of William H. Williams. He prayed a subpoena to James H. Williams, and that he may have a fair trial on his petition.
 
 
 4
 Mr. Williams appeared to the subpoena, and denied the title of the petitioner to his freedom.
 
 
 5
 Issue was joined on the pleadings, and the jury found a verdict for the petitioner, and that he was free and discharged from the service of Williams.
 
 
 6
 To the opinion of the court on the trial, a bill of exceptions was tendered by the counsel for Mr. Williams. The bill of exceptions stated, that on the trial the defendant produced, and gave in evidence to the jury, the last will and testament of Maria Ann T. Greenfield; and it was admitted that the said testatrix died at the county of Prince George's, in the state of Maryland, soon after the date of said will, in the year 1824; that upon her death, Gerard T. Greenfield, the executor named in the will, duly proved the same in the Orphans' court of said county, where the slaves and property left by the testatrix were, and took letters testamentary as such executor.
 
 
 7
 The petitioner is one of the slaves named and demised in that clause of the will, which is in the words following, to wit:
 
 
 8
 'I also give and bequeath to my nephew, Gerard T. Greenfield, all my negro slaves, namely: Ben, Mason, James Ash, Henry, George, Lewis, Rebecca, Kitty, Sophia, Mary Elizabeth, Nathaniel and Maria; also, Tony, Billy, Betty, and Anne, provided he shall not carry them out of the state of Maryland, or sell them to any one; in either of which events, I will and desire the said negroes to be free for life.'
 
 
 9
 The petitioner was a slave born, and the property of the testatrix at the time of her death; that the said G. T. Greenfield, upon the death of said testatrix, took possession of the petitioner and the other slaves devised to him, and held the same as his slaves so devised to him, from that time till the 18th day of December last, when, before the institution of this suit he sold the petitioner to the defendant: that G. T. Greenfield at the time of the date of said will, and ever since, resided in the state of Tennessee, with an interval of between two and three years, that he sojourned after the death of the testatrix, in Prince George's county, for the purpose of settling his business. Thereupon the court was of opinion, and instructed the jury, that by the fact of such sale of the petitioner the estate or property in the petitioner so devised to said G. T. Greenfield ceased and determined; and the petitioner thereupon became entitled to freedom as claimed in his said petition: to which opinion and instruction of the court, the defendant by his counsel excepted.
 
 
 10
 Judgment was rendered for the plaintiff, and the defendant prosecuted this writ of error.
 
 
 11
 Marbury, for the plaintiff in error.
 
 
 12
 Bradley, for the defendant.
 
 
 13
 Marbury contended, that as to the first question presented on the bill of exceptions, whether Mr. Greenfield took an absolute estate, by the terms of the will, in the property bequeathed to him. A devise of personal estate in general terms, without words of limitation, vests in the legatee the absolute property in the thing bequeathed. If a testator says, 'I give all my personal estate to A. B.,' without other words, A. B. will take the absolute estate in all the personal property of which the testator may die possessed.
 
 
 14
 The language of the will, in the case before the court, is as general, comprehensive, and effective, for the purpose of passing the whole estate, as language can be; and gives to the legatee the whole estate, subject only to the restriction of the right of alienation.
 
 
 15
 There is here no limitation of the estate—no intention expressed to confine the legatee to an estate for life in the slaves, or to give him a mere personal benefit by the bequest.
 
 
 16
 Admitting the validity of the restriction, if he should neither remove the negroes or sell them, at his death they will go to his representatives, to be distributed among his next of kin, if he should die intestate; and to his legatee, if he should make a testamentary bequest.
 
 
 17
 It has been suggested that this very restriction will operate to limit the legatee to an estate for life; that it shows that it was not intended he should have the absolute power and control over the negroes. But a restriction on the right to sell never has been construed into a limitation of the estate of the devisee, when the language of the will passed the fee.
 
 
 18
 The proviso is a restriction on the right of alienation. The property is given to the legatee absolutely, with a condition annexed, that he shall not sell; a condition which is repugnant to the nature of the estate, and therefore void. Co. Lit. 206 b, 223a.
 
 
 19
 If there be a limitation over, on the breach of such condition, it does not alter the case. The condition itself being void, the estate limited upon it must be void also.
 
 
 20
 What is a conditional limitation, but an estate which is to vest on a certain condition, or the happening of a certain event, by which a preceding estate is to be divested? If, then, the condition on which the preceding estate is to be divested, be unlawful and repugnant, and therefore void, the preceding estate cannot be divested; can a man be deprived of his estate by refusing to do an unlawful thing, or by doing that which the law authorizes him to do with his own? Bradley v. Pelxoto, 3 Vesey, 324; 2 Caines's Reports, 348.
 
 
 21
 It will be contended, on the part of the defendant in error, that there is something in the nature of the property which is the subject of this devise, that requires the application of a rule of law different from that which would be applied to a case arising on the title or ownership to any other kind of property.
 
 
 22
 Negroes, by the laws of Maryland, are property precisely as money in the funds, or household effects. The jus disponendi in the master is as absolute in the one case as in the other. How shall the court decide in favour of the freedom of the slave, without at the same time, and in the same judgment, deciding the right of property, as claimed? Mima Queen v. Hepburn, 7 Cranch, 295.
 
 
 23
 If, on the breach of the condition not to sell, the testatrix had given the property in the negroes to a third person, the limitation over would have been declared void; because such a restriction would be on a condition repugnant and void.
 
 
 24
 But here is a bequest of freedom, on the same repugnant conclusion. How is it to take effect, without denying to the master that control over the negroes which he is by law entitled to exercise over them, and which he might exercise over any other property in like circumstances, without subjecting himself to a forfeiture.
 
 
 25
 There is a class of cases in which it has been held that a testator may restrain the alienation of the interest given by the will, and limit the estate over in the case of alienation, whether voluntary or involuntary. This class of cases originated in the case of Dommett v. Bedford, 3 Vesey, 149. The principle of this case has become a general rule of law, in the following cases: 13 Vesey, 404, 429; 3 Swanston, 505; 5 Mod. 515; 6 Maddox, 482.
 
 
 26
 In this class of cases, the estate is vested in trustees; and it is provided that the interest or income shall be received by the trustees, and a certain portion thereof be paid at certain periods to the legatees, unless they become bankrupts, or make voluntary assignments of the amounts respectively settled in said cases; whereupon, in each case, the annuity is to cease, and the estate is devised over. Such bequests are held to be short of a life-estate, and to be intended for the mere personal benefit of the legatee.
 
 
 27
 The cases belonging to this class differ materially from that under consideration. In them the title to the estate is in trustees; in the legatee of the annuity, there is nothing but a right to receive payment of a sum of money, until the happening of a given event—his becoming bankrupt, or voluntarily parting with the right to receive it. The annuitant takes only a life-estate the gift was merely for his personal benefit.
 
 
 28
 By the will in this case the legatee took to himself the absolute property in the negroes bequeathed. The enjoyment of them is not limited to a mere personal benefit. The property does not cease at his death, but will pass to his representatives, to be disposed of, or distributed according to law.
 
 
 29
 Bradley, for the defendant.
 
 
 30
 This is a will. The intention of the testatrix to be gathered from all the parts of the will, is to be effected, if it can be, without contravening some settled principle of law. Smith v. Bell, 6 Peters, 75, and the cases cited.
 
 
 31
 What estate did Gerard take? What effect had the exportation and sale?
 
 
 32
 There are two bequests, one of property in the slaves, to Gerard, supposed to be absolute; another of freedom to the slaves, upon the happening of either of two events, defeating the first devise, and therefore limiting it. If these events are repugnant to the devise to Gerard, does that prevent their happening? If they happen, must they not give rise to the devise over?
 
 
 33
 The intent of the testatrix is clear. She meant to give Gerard a qualified, not an absolute estate, and to limit it to the happening of the event she has prescribed.
 
 
 34
 The bequest of freedom is not a condition annexed to the estate of Gerard; it is a conditional limitation of that estate, contingent until the event occurs, but becoming absolute so soon as that has happened. Preston on Est's. 40; Fearn. on Remain. 11, 14, 16.
 
 
 35
 It might be void as a bare condition, as to Gerard; yet good as a limitation, as to the slaves.
 
 
 36
 She meant to give to the slaves a higher and nobler bequest. interest she had given to Gerard? interest the had given to Gerard? The same estate or power? If so, how is it to be estimated? By what law to be controlled?
 
 
 37
 Freedom is not to be valued. Lee v. Lee, 8 Peters, 48. A question of freedom is superior to any question of property. Allen v. Wallingsford, 10 Peters, 583. It is a question deserving the favour of courts. Fenwick v. Chapman, 9 Peters, 476. Isaacs v. Randolph's Executors, 6 Rand. 652.
 
 
 38
 In construing the will, we must look to the subject-matter of both devises. The first relates to property, the second to freedom, and yet both relate to the same subject. And what is it? Is it merely property? They are slaves; but they are human beings. They may acquire freedom by implication. Mullen v. Hall, 5 Harris and Johns. 190; Legrand v. Darnell, 2 Peters, 664. They are recognised as persons in the Constitution of the United States, art. 1, sect. 9, par. 1; sect. 2, part 3; art. 4, sect. 2, par. 3. They are so recognised by courts of justice. The law of common carriers does not apply to them. Boyce v. Anderson, 2 Peters, 155. Humanity forbids the separation of mothers from infant children, and the court will not sanction it. Fitzhugh and wife v. Foote and others, 3 Call. 13.
 
 
 39
 If, then, the character of the bequest over be different from that given to Gerard—superior to property—not to be valued deserving the favour of the courts, of a wholly different nature; and the intent of the testatrix in regard to this bequest over be clear, shall that intent be defeated by rules adopted solely for the regulation of property? Is there any precedent controlling this court?
 
 
 40
 It is conceded she might have given to Gerard a life-estate, and freedom to the slaves upon his death. She could then certainly have granted a less estate, and have made this to depend upon a certain or uncertain event. Then it is immaterial how this event is brought about, by the act of Gerard, or operation of law.
 
 
 41
 She might have given a life-estate in the usufruct, to be terminated by his aliening during his life, and remainder to the slaves. Dommett v. Bedford, 6 T. R. 684; Brandon v. Robinson, 18 Vesey, 429; Yarnold v. Morehouse, 1 Russ. and Mylne, 364; Legget v. Lear, 2 Sim. 479; 4 Russ. and Mylne, 690.
 
 
 42
 Did she intend to give Gerard during his life any thing more than the usufruct?
 
 
 43
 If she has so expressed herself, that this restraint upon alienation amounts to a limitation of the previous estate, and there is a devise over, it is not necessarily so repugnant as to be void, but may be carried into effect. Wilkinson v. Wilkinson, 3 Swan. 515; Coop. C. C. 259; 2 Wils. C. C. 47.
 
 
 44
 She has so expressed herself, and it was her clear intent. Besides, upon this question of intent, we must look to the relation of the parties. The first taker is her nephew. She meant to aid him, but it must be in her own manner, by his taking a qualified estate to be held in Maryland. The others are her slaves, grown up around her, to whom she is attached—for whom she intends, as far as possible, to provide protection. She knows the laws, climate, customs under which they have been protected, and grown—she does not know whither they may be carried. She leaves them to the charge of this nephew, submodo, qualifying and restraining his power over them. There is a great primary intent pervading the whole will, an intent controlling the rights conferred on Gerard, and that is the protection and preservation of these objects of her bounty, in what she thinks the best condition for them. Is this intent opposed by any settled principle of law?It is said the law in regard to slaves, and the rules of evidence in cases of freedom are the same as in all cases of personal property, and the case of Mima Queen, 7 Cranch, 290, is relied on as sustaining this position. We deny it. The whole point of that case is as to the admissibility of hearsay evidence to prove a specific fact. We agree that the rules of evidence are and must be the same, and we invoke the aid of that principle. We apply it to ascertain the intent of the testatrix.
 
 
 45
 But are the laws of personal property applicable? Upon what principle? Upon what adjudicated case? What laws? Shall we go to England? To her system of villanage, as it once existed, in the only part of her political or judicial frame which was ever supposed to bear the least analogy to this. Trace out the analogies and see how few they are. In what do they resemble each other? Even under that condition, such a case as this could never have arisen. We can get no aid from her jurisprudence.
 
 
 46
 Shall we go to the laws of the several states? Our search would be equally vain here. The right which is held in a slave is so modified by statutory provisions, by local causes, by custom, by the common law, by the social condition, and by the local and political position of each state, that we can derive no important aid from them. It is emphatically a subject of peculiar regulation. But wherever we do find the right to manumit, we find this cardinal point, that suits for freedom are to be favoured, pervading and controlling the judicial decisions.
 
 
 47
 The laws of personal property are not applicable.
 
 
 48
 Colour, in a slaveholding state is a badge of slavery. It is not so where slavery does not exist. Accompanied by possession in the former state, it is evidence of title. An adverse possession of a slave for a period corresponding with the statute of limitations gives title in a slave. Hardeson v. Hays, 4 Yerg. 507; Partee v. Badget, 4 Yerg. 174; Brent v. Chapman, 5 Cranch, 358; Shelby v. Guy, 11 Wheat. 361; Garth's Executors v. Barksdale, 5 Munf. 101; Carter v. Carter, 5 Munf. 108; Newby v. Blakey, 3 Hen. and Mun. 57; Smart v. Baugh, 3 J. J. Marsh. 363.
 
 
 49
 But no length of possession, however open, notorious, and absolute, can prevail against a claim of freedom, where the claimant can tract back his descent from a free maternal ancestor. Rawlings v. Boston, 3 Harris and McHen. 139; or if he can show an acquired right to freedom, perfected in himself. Hunter v. Futener, 1 Leigh, 172, and cases cited. Burke v. Negro Joe, 6 Gill and Johns. 136.
 
 
 50
 By statutory provisions in Maryland, they are regarded as responsible and intellectual beings, as 'persons' capable of contracting. In some cases they are entitled to trial by jury. Maryland Act, 1751, ch. 14, sect. 4. They may contract. 1715, ch. 44, sect. 11. They may discharge the very responsible office of pilots. 1788, ch. 33.
 
 
 51
 If, then, the laws of personal property apply, to what extent do they so apply?
 
 
 52
 Considered merely as personal property, they are subject to all the laws regulating that species of property; they may be the subject of contract, pass by gift or will, descend, or be taken in execution. Their gains belong to their owner; they can make no contract with third parties, without the owner's assent, and none with their owner, and the issue of the woman is part of the use, the property of the person to whom the mother belongs, for the time being. 1 Har. and McH. 160, 352; 1 Har. and Johns. 526; 6 Har. and Johns. 16, 526.
 
 
 53
 Considered as human beings capable of acquiring, under the laws, rights paramount to all individual claims, and to be controlled only by the sovereign in the state, from the exercise of which they have been rightfully debarred by law, they acquire a higher dignity.
 
 
 54
 In their former character they are to be considered as property. But here the very question is, are they property? To determine this, shall we assume that the laws of property apply, and by those laws determine their character, and a right immeasurably above them? Can property take property? Can a man be indicted for murder of property? Can property be entitled to a trial by jury, or commit a crime, or acquire a right? Yet all this may be done by a negro; and they all imply a reasoning faculty, a conscience, an immortal spirit, in which there can be no property.
 
 
 55
 We must look to the laws of Maryland. The statutes there give them power to take freedom by devise, to take effect immediately, or at a remote period, after a term of years or a life-estate. Act 1796 and 1809. The decisions of the courts of Maryland are in favour of this capacity. The statutes direct two modes of emancipation; by will or deed. The courts have extended it to implied manumission, as in Dolly Mullens case, and to adverse possession or length of time, as in Negro Joe v. Burke.
 
 
 56
 Where, then, the intent of the testator clearly appears to secure to them liberty on the happening of an event, which has happened; or where a doubtful form of expression is used, which, in regard to mere personal property, might amount to a condition repugnant to the bequest, and thus be void, yet in favour of liberty, and having a regard to the subject of the bequest and the right intended to be conferred, the court will construe the will according to the intent, and take this to be a limitation of the estate.
 
 
 57
 Again. The intent of the testatrix is to give freedom to the slaves, unless they can be held in Maryland upon the terms she has herself declared. Now if they cannot be so held in slavery, what is to be the effect? They are free.
 
 
 58
 Again. It has been said that restraint upon alienation is void. Yet in an executory devise this restraint exists, and has never been disputed. Moffat v. Strong, 10 Johns. 12, Cordle v. Cordle, 6 Munf. 455.
 
 
 59
 But, it is said, if the devise of freedom is to depend upon the happening of the event mentioned in the will, the first estate must vest, and then the condition is void. Not so. It does not necessarily follow. Stainham and Bell, Lofft. 455; Avelyn v. Ward, 1 Ves. sen. 420; in which last case the court says, if by any means the conditional limitation is removed, the devise over will take effect. See also Simpson v. Vickers, 14 Ves. 341, and particularly Doe ex dem. Smith v. Hance, 6 Halsted, 244, 252-254.
 
 
 60
 Suppose the estate of Gerard to have vested. What was its extent and limitation? It was not intended to be absolute. The power to give or prevent freedom was not devised to him. That was already exercised. He had a qualified property. Slavery is the property which one man has in the labour of another, and the right to the custody and such limited use of the person of that other, as the particular laws allow. The power of the master is subordinate to the law of the land, and in some cases he is allowed by that law to give freedom in Maryland in presenti or in futuro. If the master once exercises this authority, it is irrevocable, the subject of it can never be reduced again to the condition of a slave, unless by legislative provision.
 
 
 61
 Now if any right in, or power over a thing granted be reserved to the grantor, or devised to a third person, the person taking has but a qualified or limited estate, it is not absolute. The grantor or devisor may annex to this qualified or limited estate, conditions by which it may be terminated at a period short of that to which it would otherwise run. The effect must be to give rise, in case of a devise over to the new estate, if there be one devised, or the property must revert. It cannot be that the tenant of the particular estate shall have the power to defeat the other and usurp the whole property to himself. Is not this the case here?
 
 
 62
 Without the proviso, the words are as absolute as in the case of Smith v. Bell, 6 Peters, 74. But the proviso must operate to restrain the general words in the same manner as the devise over of the remainder in that case. She could grant a life-estate, with freedom to take effect at its expiration, the life-estate to be forfeited upon the happening of an event, and the devise over to take effect. A fortiori she might make this life-estate to depend upon his keeping them in his own possession and in the state of Maryland. The uncertainty of the event can make no difference. It has happened. The happening of the event is during a single life, and, therefore, not too remote. We maintain, then, that this is not a naked condition annexed to an absolute estate and repugnant to it, and therefore void, but is a contingent limitation of a particular estate, with a devise over of a faculty or estate of the highest dignity and most absolute character, to take effect on the happening of a contingent event by which the particular estate was to be terminated, which event must occur during the lifetime of a person in being, and the event has happened. As to the distinction between a naked condition, and a conditional limitation, see Taylor v. Mason, 9 Wheat. 329, &c., and particularly Smith v. Hance, 6 Halsted, 244, et seq.
 
 
 63
 But, is a condition in restraint of alienation necessarily void? and are there not cases where it amounts to a limitation? The true distinction is, that where such a condition amounts to a limitation of the precedent particular estate, with a devise over, it is good. Doe d. Duke Norfolk v. Hawke, 2 East, 481; and Wilkinson v. Wilkinson, 3 Swans. 515.
 
 
 64
 The reason of the rule is obvious, it is to prevent perpetuities, and therefore the jus disponendi in an absolute estate is not to be taken away, but even this may be qualified. Litt. sec. 361; Shep. Touch. 129; Gill v. Pearson, 6 East, 173; S. C. 2 Smith, 295. This last case is a clear case of a fee simple, with a condition terminating it. If the power of disposal is not absolutely taken away, the condition restraining it may be good. Jackson v. Shutz, 18 Johns. 175, and cases cited; McWilliams v. Nisby, 2 Serg. and Rawle, 507. Here he might at any time have disposed of his interest to the slaves themselves, by releasing it.
 
 
 65
 The case of Bradley v. Piexoto, as stated in the report, does not warrant the exposition of it in the opinion of the Master of the Rolls. We do not controvert his law, for if the gift was absolute of both principal and dividends, that case cannot illustrate this. If it was not absolute, the case is wholly inconsistent with Wilkinson v. Wilkinson; Branden v. Robinson; Dommett v. Bedford; Legget v. Lear, &c. already cited, and particularly Bird v. Hudson, 3 Swans. 342.
 
 
 66
 We are considering a will. The intent is to govern. Every intent is to be effected if possible. The primary intent is to prevail. The particular intent was to give the nephew a qualified estate. The primary intent was to afford protection and security to the slaves. The restraint upon the nephew does not take away all power of alienation. The execution of every intent does not contravene any settled principle of law. The event to determine the estate of the first taker is not too remote.
 
 
 67
 Besides it is a case in favour of liberty, to be attained by the instruments, and in the mode pointed out by the statutes, a case involving one interest of the highest dignity, and depending on the happening of an event to terminate another interest of less importance.
 
 
 68
 Mr. Chief Justice TANEY delivered the opinion of the court.
 
 
 69
 This case is brought here by writ of error, from the Circuit Court of the District of Columbia, for Washington county, and came before that court upon a petition for freedom.
 
 
 70
 It appeared on the trial, that the petitioner was the property of Mary Ann T. Greenfield, of Prince George's county, in the state of Maryland, who died in 1824, having first duly made her last will and testament, whereby among other things she bequeathed the petitioner, with sundry other slaves, to her nephew, Gerard T. Greenfield, with a proviso in the following words: 'Provided he shall not carry them out of the state of Maryland, or sell them to any one; in either of which events I will and devise the said negroes to be free for life,' and she appointed her said nephew her executor.
 
 
 71
 Upon the death of the testatrix, Gerard T. Greenfield took possession of the petitioner and the other slaves bequeathed to him, and held them from that time until December, 1839, when he sold the petitioner to the defendant; and the petition for freedom was filed shortly after the sale. At the time of the making of the will, and ever since, Gerard T. Greenfield resided in the state of Tennessee; with an interval of between two and three years, during which he sojourned in Prince George's county, after the death of the testatrix, for the purpose of settling his business.
 
 
 72
 Upon this evidence, the Circuit Court instructed the jury, that by the fact of such sale of the petitioner, the estate or property in the petitioner so bequeathed to Greenfield, ceased and determined, and he therefore became entitled to his freedom.
 
 
 73
 Under this direction of the court, the verdict was in favour of the petitioner.
 
 
 74
 By the laws of Maryland, as they stood at the date of this will, and at the time of the death of the testatrix, any person might, by deed, or last will and testament, declare his slave to be free after any given period of service, or at any particular age, or upon the performance of any condition, or on the event of any contingency.
 
 
 75
 This right is recognised in the act of Assembly, of 1809, ch. 171.
 
 
 76
 The contingency upon which the petitioner was to become free must, by the terms of the will, have happened in the lifetime of Gerard T. Greenfield; and if he had died without selling him, or conveying him out of the state of Maryland, the petitioner would have continued a slave for life. The event, therefore, upon which he was to become free was not too remote.
 
 
 77
 It is said, however, that this was a restraint on alienation inconsistent with the right of property bequeathed by the will. But if, instead of giving freedom to the slave, he had been bequeathed to some third person, in the event of his being sold, or removed out of the estate by the first taker, it is evident upon common law principles, that the limitation over would have been good. 2 East, 481. Now a bequest of freedom to the slave stands upon the same principles with a bequest over to a third person. It is said by the chancellor of Maryland, 2 Bland's Chancery Rep. 314, that the bequest of freedom to a slave is a specific legacy, and undoubtedly this is its true legal character.
 
 
 78
 And if a bequest over to a third person would not be regarded as an unlawful restraint upon alienation, there can be no reason for applying a different rule where the bequest over is freedom to the slave. In the one case, the restriction on alienation ceases as soon as the devise over takes effect; and in the other, the right of property ceases upon the happening of the contingency, and there is nothing to alien.
 
 
 79
 We think that the bequest in the will was a conditional limitation of freedom to the petitioner, and that it took effect the moment he was sold. The judgment of the Circuit Court must therefore be affirmed.