PARKES and others *v.* ALDRIDGE and others.

*(Circuit Court, D. New Jersey.   July 19, 1881.)*

1. TESTAMENTARY CHARGES UPON REAL ESTATE.

Only when there has been a complete disposition of the personal property by the testator, will it be presumed that he meant to charge the land with the payment of a legacy, or the raising of money to be applied to a specific purpose.

2. CONCURRENT JURISDICTION—FEDERAL COURT—STATE COURT.

Of two courts, the one a federal court and the other a state court, having concurrent jurisdiction, the one first gaining complete jurisdiction over the controversy is entitled to retain it.

A particular will construed.

*S. B. Ransom,* for complainants.

*Whitehead & Cushing,* for Sarah Jane McClelland.

*Tho. Reyerson,* for the executor.

NIXON, D. J.   The original bill of complaint was filed in this case by George Parkes and others, children of Richard Parkes, late of Bellville, in the county of Essex and state of New Jersey, deceased, for the construction of the last will and testament of the said Richard, and for other relief, touching the administration and disposition of the estate, in the said bill particularly set forth and specified. He departed this life on or about February 28, 1873, having first made and executed his last will and testament, which, omitting the mere formal clause, was as follows:

"(1) It is my will, and I do hereby order and direct my executor hereinafter named, to pay all my just and lawful debts, death-bed and funeral expenses, as soon after my decease as may be convenient for him so to do. (2) I do hereby give and bequeath unto Sarah Jane McClelland, my housekeeper, for services rendered, the brick house now occupied by me, together with the ground surrounding the aforesaid brick house, said ground being of the following dimensions: Ninety feet front on William street, about 126 feet deep, running along the north-easterly line of Greenwich street, being a plat of ground 90 feet front and rear, and 126 feet deep, and now fenced in as a gar-

den. (3) I do hereby give and bequeath unto my housekeeper, Sarah Jane McClelland, all my personal property, consisting of the furniture in the house now occupied by me, and all other personal property wheresoever found. (4) I do hereby give and bequeath to Sarah Jane McClelland, my housekeeper, during her natural life-time, the rents and profits of the house and building known as the "shop," for the sole purpose of keeping the said houses and fences in repair. The ground to belong to said shop or house shall be 60 feet front on Washington avenue, and is 75½ feet in depth, and adjoining my garden; and at the death of the said Sarah Jane McClelland the same be sold by my executor and the proceeds to be divided among my children, share and share alike, less, however, all legal costs and charges. The brick house and ground shall belong to my said housekeeper, Sarah Jane McClelland, and her heirs and assigns; the shop and the ground to be held during her life-time in order to pay taxes and make repairs. (5) As the said Sarah Jane McClelland is not fit to earn her bread by manual labor, I do hereby bequeath to her the sum, monthly, of $15, to be paid to her monthly by my executor hereinafter named; said amount to be paid from or out of my undivided estate after the disposal of the same. (6) I do hereby order and direct that as soon as can be done after my decease, that $1,000 shall be used from my estate for fencing, grading, and the placing a head-stone on my burying lot; the same to be done under the direction and superintendence of William McIntire, who has promised to see it done in the best manner. (7) It is my will and I do hereby order and direct my executor hereinafter named, and do authorize and empower him to sell and convey, by deed in fee-simple, all or any part of the residue of my real estate for such price or prices as he may see fit, and the proceeds to be divided among my children, share and share alike. (8) I do hereby authorize and empower my executor to sell any part or all my real estate on such terms as he may see fit. (9) And I do hereby constitute and appoint Thomas Aldridge my executor of this, my last will and testament. The said Thomas Aldridge now resides in the city of Jersey City, New Jersey."

The said will was duly admitted to probate, by the surrogate of the county of Essex, on the tenth day of March, 1873, and Thomas Aldridge took upon himself the duties of the executorship, and filed an inventory and appraisements of the personal estate of the testator on the twenty-seventh of March, 1873, amounting in the aggregate to $1,105, of which $1,000 was cash in the hands of the said executor,—the proceeds of the sale of a lot of land sold by the testator before his death,—and $105 was the appraised value of the furniture in the dwelling-house, and which was specifically bequeathed to the housekeeper, Sarah Jane McClelland. The real estate of which the testator died seized, consisted of—

(1) A brick house, and lot 90 feet by 126, in Bellville, where he resided at the time of his death; (2) a house or building, known as the "shop," comprising two tenement houses, with a lot 66 feet by 75½, adjoining or near the above; (3) a plat or parcel of land on Washington avenue and William

street, in Bellville, which was subsequently run off into lots by the executor, seven of which he sold to one Francis Haggerty, on the twenty-fourth of March, 1874, for the sum of $3,631.50.

With this knowledge of the condition of the estate, it does not seem that the construction of the will ought to occasion much serious controversy. It is the duty of the court to ascertain from the whole instrument the intention of the testator, and to give effect, so far as practicable, to all the provisions of the will. When these conflict, they must, if possible, be so construed that all may stand. It is obvious that the housekeeper, Sarah Jane McClelland, was the special object of the testator's bounty. It was clearly his design to make provision out of the estate for her comfortable support. To this end, he gave to her, absolutely, his dwelling-house, with all the furniture, for her home. He ordered the rents and profits of other designated real estate to be used during her life for the payment of taxes, and to keep the house in proper repair. He further directed the payment of $15 monthly for the current expenses of her living, and provided that the money for this purpose should be paid from or out of his undivided estate. To what, then, is she entitled under the will?

(1) To all the furniture and other personal property, and to an estate in fee-simple in the brick house, and the lot or garden on which it stands, 90 feet in width and 126 feet in depth; (2) to a life estate in the two tenement houses known as the "shop," and a lot 60 feet in width and 75½ feet in depth; (3) to the monthly payment of $15 during her life, to be derived from the sale of real estate not otherwise specifically disposed of.

Where there is a complete disposition of the personal property by the testator, and there is no possibility of the payment of a legacy or money ordered to be raised for a specific purpose except from the real estate, it is the duty of the courts to presume that he meant to charge the land for such payment. See *Goddard* v. *Pomeroy*, 13 Bart. 546; 1 How. 1.

Applying this settled rule of construction to the present case, the $1,000 which was ordered to be used from the estate for fencing, grading, and placing a head-stone on the burying lot of the testator, should be paid by the executor from the proceeds of the sale of the land authorized to be sold.

What, then, is the duty of the executor?

(1) To surrender to Sarah Jane McClelland the furniture specifically bequeathed to her, and also the absolute possession and control of the brick house, with the lot, as described in the will. (2) To allow to her the rents and profits of the house and building known as the "shop," with the lot,

during her life. (3) To sell a sufficient portion of the remaining real estate to pay all debts and funeral expenses, and the sum of $1,000 for fencing, etc., the testator's burying lot; and also to create a fund from which can be realized the monthly sum of $15, and to pay said sum to Sarah Jane monthly, during her life, and after her death to divide the principal equally among the testator's children. (4) To sell, in his discretion, the residue of the real estate, not including the brick and shop property, and, after deducting the legal costs and charges of the sale, to apportion the proceeds among the children of the testator, share and share alike. (5) After the death of the said Sarah Jane, to sell the "shop" property aforesaid, and to divide the moneys arising therefrom, less costs and expenses, among the said children, share and share alike.

The moneys heretofore paid by him out of the estate for taxes and insurance of either the brick house or shop property are illegal, and cannot be allowed in the settlement of his accounts. Such expenditures, if made, are chargeable to Sarah Jane McClelland, and may be offset against her claim for her monthly allowances.

All the real estate is subject, of course, to the dower of the widow of Richard Parkes, if such widow is still living, and must be sold encumbered with this charge, unless the executor can make a satisfactory arrangement with her for the release of her right.

As to the prayer of the bill for an account, etc., it is sufficient to say that proceedings involving the subject-matter of this part of the case had already been instituted in the orphans' court of the county of Essex, by the defendant, Sarah Jane McClelland, against the executor, and were pending when the bill was filed in this court by the complainants; that the orphans' court had complete jurisdiction over the controversy, and, having first acquired it, is entitled to retain it over all tribunals having a concurrent jurisdiction, and that there is no disposition, if there was the power, to interfere with the proceedings there.

The suggestion was made on the argument that, pending this suit, the executor had been removed by the surrogate, and an administrator *cum testamento annexo* had been appointed. The learned counsel for the complainants admitted the fact to be so, but insisted that the removal of Mr. Aldridge as executor did not disturb his relations to the real estate of the testator as trustee, and that he was not divested by that act of his discretionary power to sell the land and make such disposition of the proceeds of sale as the will ordered and directed.

It is admitted, upon general principles of the law, that the offices of executor and trustee may be united in the same person, and that

it does not necessarily follow, because he does not undertake or is not allowed to discharge the duties of the one, he is incapacitated to act as the other. Where the duties of the two offices are distinct and separable, as they seem to be under the provisions of the present will, no such complications will arise as might result where a removal from office was made in a case where the duties were identical and inseparable.

But the 129th section of the orphans' court act (Revision of New Jersey, 781) has removed all question and difficulty here by providing that in case of removal of an executor by the orphans' court and the appointment of an administrator *cum testamento annexo*, the latter, among other things,—

"Shall be authorized to do all acts necessary for the administration and settlement of the estate, and the *execution of the powers* and *performance of the trusts* contained in the will of the testator, in the same manner and to the same effect as if such person or persons had been   *   *   *   named as executor or trustee in such will."

Let a decree be entered in conformity with the foregoing opinion.