# POTTER *v.* COUCH.

# HALE *v.* COUCH.

# JOHNSON *v.* COUCH.

# JOHNSON *v.* COUCH.

# COUCH *v.* COUCH.

APPEALS FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE NORTHERN DISTRICT OF ILLINOIS.

Nos. 1063, 1064, 1065, 1066, 1067. Submitted October 30, 1889. — Decided May 25, 1891.

A testator gave all his estate, real and personal, to his executors for the
term of twenty years, " in trust, and for the uses, objects and purposes
hereinafter mentioned," and authorized them to make leases not extend-
ing beyond the twenty years, and to lend money on mortgage for the
same period; and, " after the expiration of the trust estate vested in
my executors and trustees for the term of twenty years after my de-
cease," devised and bequeathed one fourth part of all his estate, subject
to the payment of debts and legacies, to his widow, one fourth to his
daughter, one fourth to his brother, and one fourth to his nephew; gave
certain legacies and annuities to other persons; directed his executors to
pay a certain part of the income to his brother " until the final division
of my estate, which shall take place at the end of twenty years after
my decease, and not sooner; " that no part of his estate should " be
sold, mortgaged (except for building) or in any manner incumbered
until the end of twenty years from and after my decease, when it may
be divided or sold for the purposes of making a division between
my devisees as herein directed; " and also that, in the event of any of
the legatees or annuitants being alive at the end of the twenty years,
there should then be a division of all his estate, " anything herein
contained to the contrary notwithstanding; and in such case my ex-
ecutors, in making division of the said estate, shall apportion each
legacy or annuity on the estate assigned to my devisees, who are
hereby charged with the payment of the same according to the appor-
tionment of my said executors; " and further provided as follows: " It
is my will that my trustees aforesaid shall pay the several gifts, lega-
cies, annuities and charges herein to the persons named in this will, and
that no creditors or assignees or purchasers shall be entitled to any part
of the bounty or bounties intended to be given by me herein for the per-
sonal advantage of the persons named; and therefore it is my will that,

if either of the devisees or legatees named in my will shall in any way or manner cease to be personally entitled to the legacy or devise made by me for his or her benefit, the share intended for such devisee or legatee shall go to his or her children, in the same manner as if such child or children had actually inherited the same, and, in the event of such person or persons having no children, then to my daughter and her heirs." He also declared it to be his wish that W., one of his executors, should collect the rents and have the general supervision during the twenty years; and further provided that the share devised to his daughter should be conveyed at the expiration of the twenty years, for her sole use, to three trustees to be chosen before her marriage by herself and the trustees named in the will, and the net income be paid to her personally for life, and the principal be conveyed after her death to her children or appointees; and that, in the event of his wife's marrying again, the share devised to her should be held by his trustees for her sole use. *Held:*

(1) That the powers conferred and the trusts imposed were annexed to the office of executors; and that they took the legal title in fee, to hold until they had divided the estate, or the proceeds of its sale, among the devisees of the residue.

(2) That an equitable estate in fee in one fourth of the residue of the estate vested in the brother and the nephew, respectively, from the death of the testator.

(3) That the limitation over, in case of alienation, was intended to apply to the residuary devises, but was void because repugnant to the estates devised.

(4) That by the law of Illinois such an equitable estate could not be taken, at law or in equity, for the debts of the owner.

(5) That a conveyance thereof by such owner, in consideration of an agreement of the grantee to buy up outstanding judgments against the grantor, and to sell the interest conveyed and pay one half of the net proceeds to the grantor's wife, no part of which agreement was performed by the grantee, gave him no right which a court of equity would enforce.

(6) That these conclusions were not affected by the following facts : The daughter was married ten years after the death of the testator, having first, by indenture with the trustees named in the will, appointed them to be trustees for the benefit of herself and her children. Just before the end of twenty years from the testator's death, a mortgagee of all the real estate agreed with the trustees under the will to postpone payment of the principal and to reduce the rate of interest of the mortgage debt, provided the whole estate should continue to be managed by W.; and thereupon the testator's widow, brother, nephew, daughter and her husband, individually, and the widow, brother and W., as trustees of the daughter, made to W. a power of attorney, reciting that by the will the testator devised his whole estate in trust for the period of twenty years, which was about to expire, and upon the termina-

tion of that trust to the widow, brother, nephew and daughter in equal parts, and that it was deemed advantageous to the devisees, as well as to the mortgagee, that the estate should continue to be managed as a whole, and therefore authorizing W. to take possession, to collect rents, to pay taxes, debts against the estate, and expenses of repairs and management, and to sell and convey the whole or any part of the estate at his discretion.

THESE were appeals from a decree in equity by various persons asserting claims to the real estate devised by Ira Couch, who died January 28, 1857, to his brother James and to his nephew Ira, by his will dated November 12, 1855, and duly admitted to probate March 21, 1857, by which he appointed his wife Caroline E. Couch, his brother James Couch and his brother-in-law William H. Wood executors and trustees, and devised and bequeathed all his property, real and personal, to them in trust for the term of twenty years and for certain uses and purposes; and then, (after payment of debts and legacies,) in equal fourths, to his wife, to his daughter and her children, to his brother James, and to his nephew Ira, the son of James, with devises over in case of alienation. The material provisions of the will are copied or stated in the margin[1];

_____

[1] "First. I do hereby give, bequeath and devise unto my beloved wife Caroline Elizabeth Couch, and my brother James Couch, and my brother-in-law William H. Wood, whom I hereby constitute, make and appoint to be my executrix, executors and trustees of this my last will and testament, and the survivors of them, and, in the event of the death of either of them, the successor appointed by the surviving trustee or trustees, all my estate, both real and personal, of every nature and description, for the term of twenty years, in trust, and for the uses and objects and purposes hereinafter mentioned and expressed, and for the purpose of enabling them more fully to carry into effect the provisions of this will, and for no other use, purpose or object; hereby giving and granting unto my said executors and trustees full power and lawful authority to lease my real estate at such time or times, and in such parcels, and in such way and manner and upon such terms and conditions as to my said executors and trustees, or the survivors or successors of them, in their sound discretion shall be deemed most advantageous and for the true interest of my estate, but no lease shall be granted of any building for a longer term than five years, and all leases shall expire at the end of twenty years from the time of my death. And I do also hereby authorize and empower my said executors and trustees, and the survivor or survivors of them and their successors, from time to time,

and so much of the facts as is necessary to the understanding of the questions of law decided was as follows:

---

as they in the exercise of a sound discretion shall deem for the true interest of the estate, to purchase with the surplus funds belonging to my estate such real estate as they may deem proper and expedient, and take and hold the same, as such executors and trustees as aforesaid, upon the same trusts and for the same uses and purposes as the other real estate now owned by me; and more especially to purchase for the benefit and use of my estate, when they, my said executors and trustees, or the survivors and survivor of them or successors, shall think it expedient so to do, any real estate which is or may be subject to any such judgment, decree or mortgage as is or at any time hereafter may become a lien, charge or incumbrance for my benefit or for the benefit of my heirs or executors upon the same, and, again, that my said executors and trustees have the like discretion to lease the same. And I do hereby authorize my said executors and trustees, if they shall think proper so to do, to loan on real estate situate in the city of Chicago any of the surplus moneys, arising from my said estate as aforesaid, on bond and mortgage; provided always that such real estate shall be worth double the amount so loaned thereon, over and above any other liens and incumbrances existing against the same, and that such moneys shall not be loaned for a longer period than twenty years from my decease.

"And generally I do hereby fully authorize and empower my said executors and trustees, from time to time, to improve my real estate, and invest all surplus moneys belonging to my estate, arising from any source whatever, and not wanted immediately, or required to meet the payments and advances, legacies, annuities and charges, required to be made under this my said will, in such way and manner as to them my said executors and trustees, or the survivor or successors of them, in the exercise of a sound discretion shall be deemed most safe and productive; but no moneys are to be invested, except in improving my real estate, or in the purchase of other real estate, or on bond and mortgage as aforesaid. And I direct that my executors or trustees or their successors shall not purchase or improve by building upon any real estate after the expiration of sixteen years from my decease.

"Relying on the fidelity and prudence of my said executors and trustees in executing the various trusts to them given and confided in and by this my last will and testament, my executors are authorized to mortgage my real estate to improve by building on the same, only in the event of the destruction of some of my buildings by the elements, and then only to supply other buildings in the place of those destroyed.

"It is my will that all my just debts and the charges of funeral expenses be paid and discharged by my executors, as hereinafter named and appointed, out of my estate, as soon as conveniently may be after my decease, and the said debts become due; and I leave the charge of my funeral expenses to the discretion of my said executors.

It was contended by some of the parties that the real estate devised by this will was owned jointly by the testator and his

"Second. I give, devise and bequeath to my beloved wife Caroline Elizabeth Couch, after the expiration of the trust estate vested in my executors and trustees for the term of twenty years after my decease, one fourth part of all my estate, both real and personal, after the payment of all my debts, funeral expenses and the legacies in this will mentioned, which are hereby made a charge on said real estate, which part is to be accepted by my said wife and received by her in lieu of dower.

"Third. I give, devise and bequeath unto my beloved daughter Caroline Elizabeth Couch, after the expiration of the trust estate so vested as aforesaid, one fourth part of all my estate, both real and personal, after the payment of all my debts, funeral expenses and the legacies in this will mentioned.

"Fourth. I give, devise and bequeath unto my brother James Couch, after the expiration of the trust estate so vested as aforesaid, one fourth part of all my estate, both real and personal, after the payment of all my debts, funeral expenses and the legacies in this will mentioned.

"Fifth. I give, devise and bequeath unto my nephew Ira Couch, son of my brother James, after the expiration of the trust estate so vested as aforesaid, the remaining one fourth part of all my estate, both real and personal, after the payment of all my just debts, funeral expenses and the legacies in this will mentioned.

"Sixth. I hereby will and direct that the said legacies hereinafter mentioned shall be charged on my real estate, to be paid out of the rents and profits thereof as hereinafter directed."

By the seventh and eighth clauses, the testator gave annuities for life to his sister Rachel and to his mother-in-law; and by the ninth clause an annuity to a brother-in-law who died before him.

"Tenth. I give and bequeath to my wife Caroline Elizabeth Couch, for the support of herself and daughter, from the rents of my real estate, the sum of ten thousand dollars a year until all the debts due by me are paid by my executors, and after my executors have paid such debts I give and bequeath to her for the same purpose fifteen thousand dollars a year, to be paid quarterly to her until my daughter becomes of age or is married, when my daughter may draw one fourth of all the net rents and profits, after payment of all expenses, taxes, repairs, legacies, annuities and other charges on my said estate; and my wife may draw ten thousand dollars a year until my nephew Ira Couch attains his majority, when she shall draw one fourth of all the net rents and profits, after paying all expenses, taxes, repairs, legacies, annuities and other charges as aforesaid.

"Eleventh. I give and bequeath to my brother James Couch, for the support of himself and family, from the rents of my real estate, the sum of ten thousand dollars a year, to be paid quarterly until all the debts due by me are paid by my executors, and after such debts due by me are paid I

brother James.  But upon the whole evidence it clearly appeared that, although James lived with the testator and helped.

---

give to him for the same purpose fifteen thousand dollars a year, to be paid quarterly to him until my nephew Ira Couch attains his majority, after which time I give to my brother James Couch one fourth part of all the net rents, income and profits of my estate, to be paid him by my executors quarterly until the final division of my estate, which shall take place at the end of twenty years after my decease, and not sooner."

By the twelfth and thirteenth clauses, he gave legacies to children of a deceased brother, and of his sister Rachel.

" Sixteenth. I will and direct that no part of my estate, neither the real nor the personal, shall be sold, mortgaged (except for building) or in any manner incumbered, until the end of twenty years from and after my decease, when it may be divided or sold for the purposes of making a division between my devisees as herein directed.

" Seventeenth. It is my will that any and all real estate which may hereafter be purchased by me shall be disposed of, and is hereby devised, in the same manner and to the same persons as if owned by me at the time of making this my last will and testament.

" Eighteenth. In the event of any of the legatees or annuitants being alive at the end of twenty years after my decease, it is my will and I hereby direct that there shall be a division of all my estate, both real and personal, at the end of said twenty years, anything herein contained to the contrary notwithstanding; and in such case my executors, in making division of the said estate, shall apportion each legacy or annuity on the estate assigned to my devisees, who are hereby charged with the payment of the same according to the apportionment of my said executors.

" Nineteenth. It is my will that my trustees aforesaid shall pay the several gifts, legacies, annuities and charges herein to the persons named in this will, and that no creditors or assignees or purchasers shall be entitled to any part of the bounty or bounties intended to be given by me herein for the personal advantage of the persons named; and therefore it is my will that, if either of the devisees or legatees named in my will shall in any way or manner cease to be personally entitled to the legacy or devise made by me for his or her benefit, the share intended for such devisee or legatee shall go to his or her children, in the same manner as if such child or children had actually inherited the same, and, in the event of such person or persons having no children, then to my daughter and her heirs.

" Twentieth. It is my will that the estate, both real and personal, hereby devised and bequeathed to my daughter Caroline Elizabeth, shall be vested in trustees to be chosen by herself and my trustees herein named, before her marriage; and said trustees shall be three in number, to whom all her estate, both real and personal, shall be conveyed at the expiration of twenty years, the time hereinbefore specified for the termination of the estate of my trustees herein, to such trustees so to be appointed as aforesaid; and it

him in his business, they were not partners, and, as James knew, all the real estate was bought and paid for by the testator out of his own money, and the deeds were taken in his name. The property belonged to the testator; and James had no title in it, legal or equitable, except under the will.

Caroline E. Couch, the testator's daughter, was married January 28, 1867, to George B. Johnson, having before her marriage, and by indenture with the trustees named in the

is my will that the estate, both real and personal, herein devised and bequeathed for the benefit of my daughter, shall be held by such trustees for her sole and only use and benefit, and that the same shall not in any manner be subject to the marital rights of any future husband my daughter may have, and that all moneys shall be paid by such trustees to my daughter personally, and to no other person for her, except upon her written order or assent; and it is my will that her said trustees pay to her during her life the entire net income of the estate, both real and personal, herein devised and bequeathed to my daughter, after the same shall have been conveyed to her trustees by my executors and trustees or their successors; and after the death of my said daughter I direct that the said estate, both real and personal, shall be conveyed to the children of my daughter, and, in the event of her having no children, to such person as my daughter may direct by her last will and testament.

"Twenty-first. It is my wish also that William H. Wood, my executor and trustee, shall be charged with and take upon himself the collection of all rents accruing to my estate, and that he shall continue to perform the same during the period of twenty years after my decease; and for the performance of this service and other services, and for his general care and supervision of the affairs of my estate, I hereby direct that the sum of two thousand dollars per annum shall be paid to him; but in the event of his decease before entering upon said duties, or before the twenty years aforesaid shall expire, or shall decline to act as in this section provided, I hereby authorize and direct my said trustees to appoint some other person to act in his stead in collecting said rents and performing the other duties as above specified, and to pay him the same compensation therefor which said Wood would have had.

"Twenty-second. And in the event of the marriage of my said wife after my decease it is my will and I hereby authorize and direct my said trustees and executors to pay over to my said wife, and to no other person, the rents, annuities, legacies and other income herein bequeathed to my said wife, and to take her separate receipts therefor; and it is my will that my said trustees and their successors in such case hold the same, subject to her order, in trust for my said wife, so that said property so devised and bequeathed to her as aforesaid can in no event be subject to the marital rights of such husband."

will, appointed them to be trustees for the benefit of herself and her children, under the twentieth clause of the will. Three children of this marriage were born before 1877.

The testator left real estate, worth about $1,000,000, consisting of nine lots of land in the heart of the city of Chicago, on two of which stood the Tremont House; and left personal property to the amount of $11,000; and owed debts amounting to $112,000, besides unpaid taxes on real estate. The trustees under the will, Wood collecting the rents and having the principal management, improved the real estate, so as to produce a large net income, until the great fire of October, 1871, destroyed all the buildings. In 1872 and 1873, the trustees erected new buildings on the property, at an expense of $1,000,000, of which they borrowed $750,000, on mortgage executed by the trustees, as well as by the widow, James, Ira, and the daughter and her husband, individually, of all the nine lots, payable November 1, 1877, with yearly interest at eight per cent.

On the completion of the new Tremont House, the trustees being unable to find any person, not interested in the estate, who would undertake to pay a fair rent and provide the necessary furniture, a lease thereof was made on November 15, 1873, by the widow, James Couch and William H. Wood, as trustees under the will and as trustees of the daughter, and by the widow James, Ira, and the daughter and her husband, individually, for ten years, to James Couch, who agreed to furnish it and carry it on as a hotel, and to pay one tenth of the gross amount of his receipts therefrom until February 1, 1877, to the widow and Wood as joint trustees with himself under the will, and after that date to pay to the widow, to Ira and to the daughter's trustees, three fourths of such tenth, retaining the other fourth himself. James Couch carried on the hotel accordingly, but unsuccessfully, until January 18, 1879, when his lease was terminated, and the hotel was leased to another person.

In December, 1876, the mortgagee agreed with the trustees named in the will to extend the term of payment of the principal of the mortgage debt, and to reduce the rate of interest,

provided the whole estate should continue to be managed as before, and Wood should remain in the principal charge and control thereof.

On January 8, 1877, James Couch and wife, the testator's widow, the daughter and her husband, and Ira and his wife, in their individual names, and the widow, James Couch and William H. Wood, as trustees of the daughter, executed and delivered to Wood a power of attorney, containing these recitals: "Whereas by the will of Ira Couch, deceased, all of his estate, both real and personal, was devised and bequeathed to James Couch, Caroline E. Couch and William H. Wood, in trust for the period of twenty years from the time of his death, which period will expire the twenty-eighth day of January, 1877, and, upon the termination of said trust, to the said James Couch, and Caroline E. Couch, and to Ira Couch, son of said James Couch, and Caroline E. Johnson, daughter of said testator, and now the wife of George B. Johnson, one fourth thereof to each of said devisees." "And whereas the said Caroline E. Johnson did, prior to her marriage and pursuant to the provisions of said will, by her deed of trust, appoint the said James Couch, Caroline E. Couch and William H. Wood trustees of all her share and interest in said estate; and whereas, by reason of the destruction of the buildings belonging to said estate, and situate upon said lands, by fire, the said trustees under said will have, as such trustees, incurred a large indebtedness in rebuilding the same, and for other purposes beneficial to said estate, and which indebtedness is a lien or incumbrance thereon; and whereas it is deemed advantageous to the undersigned devisees as aforesaid, as well as to the creditors of said estate, that the same should, from the time of the expiration of the said period of twenty years, be managed as a whole, by some person appointed and agreed upon by the parties interested, to the end that sales of said estate, or parts thereof, may be made from time to time to meet the said indebtedness, that said estate may in the meantime be kept rented, and the income therefrom applied to the payment of the interest on indebtedness, the taxes, premiums on insurance, and the expenses for repairs, and for the management of the estate." This power accordingly

authorized Wood, on and after January 28, 1877, to enter upon and take possession of all the real estate devised; to rent it, and to collect the rents, and also all arrears of rent under leases made by the trustees under the will; to pay taxes and assessments, and the interest and principal of debts against the estate, and all expenses of repairs, preservation and management thereof, and to borrow money when necessary for these purposes; and to sell and convey the whole or any part of the estate whenever and upon such terms as in his judgment should be for the best interest of the constituents; and provided that it should be irrevocable, except that after January 28, 1880, a majority of them, or, on giving six months' notice in writing, any one of them might "revoke this power of attorney and annul this agreement."

By reason of the embarrassment caused by the financial panic of 1873, the real estate depreciated in value, so that it was worth less than the sum due on the mortgage, and during the years 1876, 1877 and 1878 the income was insufficient to pay the interest on the mortgage debt, taxes, insurance and expenses.   The estate afterwards increased in value until 1884, when the income had become sufficient to pay annual expenses and interest and a large part of the principal.

The testator's debts, and the legacies given by the twelfth and thirteenth clauses of the will, as well as the annuities to the testator's sister and to his mother-in-law under the seventh and eighth clauses, were all duly paid before 1877, those annuitants having died before that time.  The annuities to his widow and daughter under the tenth clause were paid until the fire of October, 1871, but were not paid in full afterwards; and his brother James was paid more than his share of the income under the eleventh clause.

The estate was never divided by the executors among the devisees of the residue, because of the impossibility of making partition of the most valuable lots, or of selling them, except at a great sacrifice.

On February 15, 1879, judgments to the amount of $6000 were recovered against James Couch, in a court of the State of Illinois, on debts contracted since January 28, 1877, and execu-

tions thereon were forthwith taken out and returned unsatisfied. On February 24, 1879, one Sprague, who recovered two of those judgments, amounting to $1097.85, brought a suit in equity in that court, upon which a receiver was appointed, to whom, by order of that court, on March 29, 1879, James Couch executed a deed of all property, equitable interests, things in action, and effects, belonging to him. In 1881 and 1882, James Couch's undivided fourth of the real estate devised was levied on and sold by the sheriff on pluries executions issued on Sprague's judgments at law.

On May 10, 1879, one Brown, as trustee for Howard Potter, recovered judgment in the Circuit Court of the United States against James Couch for $15,038.92 on a debt contracted in 1874; and, in 1881, caused an alias execution thereon to be levied on the same undivided fourth, and purchased the same at the marshal's sale on execution.

On February 9, 1881, James Couch and Elizabeth G. Couch, his wife, executed a deed of all their interest in that fourth to William E. Hale, expressed to be for a nominal consideration, but the real consideration for which was a contemporaneous agreement between the wife and Hale, by which Hale agreed to buy up the judgments existing against James Couch, and to sell the interests conveyed to him by the deed, and, after reimbursing himself for his expenses, to pay one half of the proceeds to her, and hold the other half to his own use. Hale bought up the judgments recovered February 15, 1879, being about one third of the judgments against Couch, as well as the title under the sheriff's sale aforesaid; but on November 16, 1882, sold them again to Potter, and never bought up any of Potter's claims, or paid anything to Elizabeth G. Couch.

Ira Couch, the testator's nephew, came of age January 9, 1869, and never had any children. His interest in the estate of the testator was conveyed by him, being insolvent, on January 29, 1877, to one Dupee, as trustee for his creditors, with authority to sell at private sale; by Dupee on November 26, 1881, to one Everett, in consideration of the sum of $1000 paid by Elizabeth G. Couch, mother of Ira; by Everett on November 28, 1881, to her; and by her, on February 28, 1886, back to Ira.

On March 9, 1885, Caroline E. Johnson, the testator's daughter, conveyed to her husband all right, title and interest she might or could have in real estate under the nineteenth clause of the will. On July 5, 1885, she died, leaving her husband and three children surviving her.

On July 14, 1884, James Couch, Caroline E. Couch and William H. Wood, being the executors and trustees, and the first two of them devisees named in the will, filed a bill in equity in the state court to obtain a construction thereof, to which Caroline E. Johnson and her husband and children, Elizabeth G. Couch, Potter, Hale, Ira Couch, the judgment creditors of James Couch and the receiver appointed in Sprague's suit in equity, were made parties.

On August 4, 1884, Potter filed in the Circuit Court of the United States a bill for partition of the real estate of the testator, making all other parties interested defendants. On October 23, 1884, the bill for the construction of the will, and on May 15, 1885, the bill of Sprague, were removed into that court. On August 3, 1885, these three causes were consolidated by order of the court; and on November 18, 1887, after the various parties had filed answers stating their claims, it was ordered that each answer might be taken and considered as a cross bill.

No question was made as to the share devised to the wife by the second clause, or as to the share devised to the daughter and her children by the third and the twentieth clauses of the will.

The claims of the various parties to the shares devised to the testator's brother James by the fourth clause, and to the testator's nephew Ira by the fifth clause, were as follows:

Potter claimed the share of James under the judgments and the sales on execution against him.

Hale claimed the same share under the deed to him from James and wife.

James claimed his share under the fourth clause of the will.

Ira claimed his share under the fifth clause; and also claimed the share of James, on the ground that, by reason of the alienations thereof to Potter and to Hale, the devise over in the nineteenth clause to his children took effect.

The daughter's husband and her children respectively claimed the shares of both James and Ira, contending that, by reason of the alienations thereof, they vested, under the ultimate devise over in the nineteenth clause, in the daughter and her heirs; the husband claiming under his wife's deed to him; and the children claiming under the twentieth clause of the will, by reason of her death.

By the decree, it was declared that the devised estate vested at the expiration of twenty years from the testator's death, one fourth in fee in the widow, one fourth in fee in James, one fourth in fee in Ira, and the remaining fourth in the daughter for life, with remainder in fee to her children; and the claims of Potter, of Hale, and of the daughter's husband and children, to the shares of James and of Ira, and of Ira to the share of James, were disallowed. Potter, Hale, the daughter's husband and her children, respectively appealed from the disallowance of their claims; and James Couch appealed from so much of the decree as declared that the legal title under the residuary devises vested at the expiration of twenty years from the testator's death. The five appeals were submitted together on printed briefs and arguments.

*Mr. Henry B. Mason* for Potter.

*Mr. Monroe L. Willard* for Hale.

*Mr. D. K. Tenney* for George B. Johnson, husband of Caroline E. Johnson.

*Mr. Charles H. Aldrich* for Mrs. Johnson's children.

*Mr. John S. Cooper* and *Mr. John G. Reid* for James Couch and Elizabeth G. Couch.

*Mr. Charles H. Wood* for Ira Couch, son of James.

*Mr. William H. Wood* and *Mr. C. Beckwith* for the trustees.

MR. JUSTICE GRAY, after stating the case as above, delivered the opinion of the court.

The matters in controversy concern those shares only of Ira Couch's real estate, which he devised to his brother James and to his nephew Ira, the son of James.

1. In order to ascertain the nature and the time of vesting of their interests, it is important in the first place to determine the extent and duration of the trust estate of the executors and trustees named in the will, bearing in mind the settled rule that whether trustees take an estate in fee depends upon the requirements of the trust, and not upon the insertion of words of inheritance. *Doe* v. *Considine*, 6 Wall. 458; *Young* v. *Bradley*, 101 U. S. 782; *Kirkland* v. *Cox*, 94 Illinois, 400.

In the first clause of the will, the testator appoints his wife, his brother James and his brother-in-law Wood " executors and trustees " of his will, and devises and bequeathes to them all his estate, real and personal, " for the term of twenty years, in trust, and for the uses and objects and purposes hereinafter mentioned and expressed, and for the purpose of enabling them more fully to carry into effect the provisions of this will, and for no other use, purpose or object; " authorizes them to lease his real estate at their discretion, and, out of any surplus funds, to improve his real estate, to purchase other real estate to be held upon the same trusts, and to lend money on bond and mortgage; but, in order that their doings may not create any obstacle to the division of his real estate at the end of the twenty years, provides that they shall not make leases, or lend money on mortgage, beyond twenty years, or purchase, or improve by building, after sixteen years from his death; and he also authorizes them to mortgage real estate for the purpose of rebuilding in case of destruction by the elements.

In the next four clauses, he devises and bequeaths to his widow, daughter, brother and nephew, respectively, " after the expiration of the trust estate vested in my executors and trustees for the term of twenty years after my decease," one fourth part of all his estate, both real and personal, after payment of

debts and legacies, which he charges upon the real estate. In the eleventh clause, he directs his executors to pay to his brother a certain part of the income " until the final division of my estate, which shall take place at the end of twenty years after my decease, and not sooner." And in the twenty-first clause he declares his wish that Wood shall collect the rents and have the general care and supervision of the affairs of the estate during the same period.

These provisions, had the testator said nothing more upon the subject, might have been construed as assuming or imply- ing that the trust estate was to terminate at the end of twenty years from the testator's death, without any act or conveyance on the part of the trustees. But the will contains other pro- visions concerning the powers and duties of the trustees, which are wholly inconsistent with such a conclusion.

The sixteenth clause is as follows : " I will and direct that no part of my estate, neither the real nor the personal, shall be sold, mortgaged (except for building) or in any manner incumbered, until the end of twenty years from and after my decease, when it may be divided or sold for the purposes of making a division between my devisees as herein directed." The very object of this clause is to define when and for what purposes the trustees may mortgage or may sell the real estate. Before the end of twenty years, it is neither to be mortgaged, (except for building, as allowed in the first clause) nor to be sold. At the end of the twenty years, all authority to mort- gage it is to cease, but " it may be divided or sold for the pur- poses of making a division between my devisees as herein directed." This division or sale (like all sales or mortgages spoken of in this clause) is evidently one to be made by the trustees, under authority derived from the testator, and while the legal title remains in them ; not a judicial division or sale for the purpose of partition, after the legal title has passed to the residuary devisees.

Again ; in the eighteenth clause, the testator directs that, in the event of any of the legatees or annuitants being alive at the end of twenty years after his death, there shall be a divis- ion of all his estate at that time, " anything herein contained

to the contrary notwithstanding;" and that "in such case my executors, in making division of the said estate, shall apportion each legacy or annuity on the estate assigned to my devisees, who are hereby charged with the payment of the same according to the apportionment of my said executors." This clause puts beyond doubt the intention of the testator, not only that the division of his estate, and the assignment and conveyance of the several shares to each devisee, shall be made by his executors, but that the question which share shall be charged with the payment of any legacy or annuity shall depend upon the act of the executors in making the division among the devisees.

Although, at the expiration of twenty years from the testator's death, all the legacies and annuities to others than the residuary devisees had in fact been paid, yet the duty still remained in the executors and trustees to make a division, by sale if necessary. Under the circumstances of this case, it was impracticable to make the division, either by the partition, of the lands themselves, or by selling them and distributing the proceeds, immediately upon the expiration of the twenty years; and until a division was made, in one form or the other, by the executors and trustees, the legal title must remain in them. The sale and conveyance by them, whether directly to the residuary devisees, or to third persons for the purpose of paying the proceeds to those devisees, was not in the exercise of a power over an estate vested in other persons, but was for the purpose of terminating an estate vested in the executors and trustees themselves, by conveying it to others.

The twentieth clause, by which the daughter's share, in case of her marriage, is to be conveyed at the expiration of the twenty years by the trustees named in the will to trustees for the benefit of herself and her children, and the twenty-second clause, by which the share of the widow, in case of her marrying again, is to be held by the executors and trustees in trust for her, are also worthy of notice in this connection, although they might not, standing alone, affect the time of vesting of the legal title in the shares of the brother and the nephew. *Wellford* v. *Snyder,* 137 U. S. 521.

There can be no doubt that all the powers conferred, and all the trusts imposed, were annexed to the office of executors, and not to a distinct office of trustees. And, taking the whole will together, it is quite clear that the legal title of the executors and trustees did not absolutely terminate upon the expiration of twenty years from the death of the testator, because it was necessary, for the purpose of enabling them to execute the trusts and to carry out the provisions of the will, that the legal title should be and continue in them until they had, by sale or otherwise, settled the estate, and conveyed to the devisees severally their shares in the estate or its proceeds. The testator doubtless intended that after the expiration of the twenty years the estate should cease to be held and managed by his executors and trustees as a whole, and should be divided into four parts to be held in severalty by or for his residuary devisees. But he intended, and expressly provided, that the division should be made by his executors and trustees; and therefore their trust estate could not terminate until they had made the division and conveyed the shares. *McArthur* v. *Scott*, 113 U. S. 340, 377; *Kirkland* v. *Cox*, 94 Illinois, 400; Perry on Trusts, §§ 305, 315, 320. Whether, in case of unreasonable delay on their part to make the division, a court of equity might have compelled them to do so, is a question not presented by this record.

The decision of the Supreme Court of Illinois in *Kirkland* v. *Cox*, above cited, is much in point. In that case, the testator devised and bequeathed all his estate, real and personal, to trustees, to control and manage it, and to make such disposition of it as should in their judgment increase its value; to pay to his daughter such instalments as they should deem sufficient for her support until she reached the age of thirty-five years, and then to convey the estate to her in fee; authorizing them, however, if she should be then married to a man whom they thought unworthy, to continue to hold the title in trust during his life; and further providing that, if she died without issue, the whole estate, after paying certain legacies, should "be divided equally between" three charitable corporations. It was held that the powers conferred on the trustees implied

a power to sell the lands and convert them into money or interest-bearing securities; and, therefore, that the trustees took and held the title in fee simple, notwithstanding the death of the daughter before reaching the age of thirty-five years, the court saying: "The power implied to sell is to sell the whole title — and to this is essential the power to convey that title, requiring, as a condition precedent, a fee simple estate in the trustees. The property is devised to the trustees to sell and convey if they deem it advisable, or to hold and control until it is to be transferred as directed; and in the contingency that has arisen, it was intended that it should be the duty of the trustees to make the equal division of the property between the corporations designated and convey it accordingly — for the grant to these corporations is in severalty, and not as tenants in common, and their title must necessarily rest on the conveyance of the trustees." 94 Illinois, 415.

The cases cited against this conclusion differ widely from the case at bar. The two most relied on were *Minors* v. *Battison*, 1 App. Cas. 428, in which the facts were very peculiar, and there was much diversity of opinion among the judges before whom it was successively brought; and *Manice* v. *Manice*, 43 N. Y. 303, in which the construction adopted was the only one consistent with the validity of the will under the statutes of New York.

2. From this view of the nature and duration of the estate of the trustees, it necessarily follows that by the terms of the fourth and fifth clauses of the will, devising and bequeathing to the testator's brother and nephew, respectively, "after the expiration of the trust estate vested in my executors and trustees," "one fourth part of all my estate, both real and personal," (after the payment of debts and legacies, which he charged upon the real estate,) no legal title in any specific part of the estate, and no right of possession, vested in either of them, until the trustees had divided the estate and conveyed to each of them one fourth of the estate or of the proceeds of its sale; but, on well settled principles, an equitable estate in fee in one fourth of the residue of the testator's whole property vested in the brother and in the nephew respectively from the death of

the testator. *Cropley* v. *Cooper*, 19 Wall. 167; *McArthur* v. *Scott*, 113 U. S. 340, 378, 380; *Phipps* v. *Ackers*, 9 Cl. & Fin. 583; *Weston* v. *Weston*, 125 Mass. 268; *Nicoll* v. *Scott*, 99 Illinois, 529; *Scofield* v. *Olcott*, 120 Illinois, 362.

To the suggestion that the will violated the rule against perpetuities, which prohibits the tying up of property beyond a life or lives in being and twenty-one years afterwards, it is a sufficient answer that after twenty years from the death of the testator, and after the death of the widow and daughter, (if not before,) the title, legal and equitable, in the whole estate would be vested in persons capable of conveying it. *Waldo* v. *Cummings*, 45 Illinois, 421; *Lunt* v. *Lunt*, 108 Illinois, 307.

3. Nor is the estate of the residuary devisees affected by the nineteenth clause of the will, which is in these words: "It is my will that my trustees aforesaid shall pay the several gifts, legacies, annuities and charges herein to the persons named in this will, and that no creditors or assignees or purchasers shall be entitled to any part of the bounty or bounties intended to be given by me herein for the personal advantage of the persons named; and therefore it is my will that, if either of the devisees or legatees named in my will shall in any way or manner cease to be personally entitled to the legacy or devise made by me for his or her benefit, the share intended for such devisee or legatee shall go to his or her children, in the same manner as if such child or children had actually inherited the same, and, in the event of such person or persons having no children, then to my daughter and her heirs."

The devise over in this clause cannot, indeed, by reason of the words "gifts, legacies, annuities and charges," and "bounty or bounties," in the preamble, be confined to the legacies and annuities given by the testator and charged on his real estate by clauses six to thirteen inclusive, and by clause eighteen. So to hold would be utterly to disregard the comprehensive and decisive words, "devisees or legatees," "legacy or devise," and "share intended for such devisee or legatee," by which the testator clearly manifests his intention that the devise over shall attach to the shares of his real estate devised

to his widow, daughter, brother and nephew, respectively, by clauses two, three, four and five, except so far as its effect upon the shares of the daughter and the widow may be modified by the trusts created for their benefit by clauses twenty and twenty-two.

The testator having declared his will that the devises of the shares shall be " for the personal advantage of" the devisees, and that " no creditors or assignees or purchasers shall be entitled to any part," and having directed the devise over to take effect " if either of the devisees shall in any way or manner cease to be, personally entitled to the devise made for his benefit," the devise over of the shares of the brother and the nephew, if valid, would take effect upon any alienation by the first devisee, whether voluntary .or involuntary, by sale and conveyance, by levy of execution, by adjudication of bankruptcy, or otherwise ; or, at least, upon any such alienation before his vested equitable estate became a legal estate after the expiration of the twenty years.

But the right of alienation is an inherent and inseparable quality of an estate in fee simple. In a devise of land in fee simple, therefore, a condition against all alienation is void, because repugnant to the estate devised. Lit. § 360 ; Co. Lit. 206 b, 223 a ; 4 Kent Com. 131; *McDonogh* v. *Murdock,* 15 How. 367, 373, 375, 412. For the same reason, a limitation over, in case the first devisee shall alien, is equally void, whether the estate be legal or equitable. *Howard* v. *Carusi,* 109 U. S. 725; *Ware* v. *Cann,* 10 B. & C. 433; *Shaw* v. *Ford,* 7 Ch. D. 669; *In re Dugdale,* 38 Ch. D. 176; *Corbett* v. *Corbett,* 13 P. D. 136; *Steib* v. *Whitehead,* 111 Illinois, 247, 251 ; *Kelley* v. *Meins,* 13 Mass. 231, and cases there cited. And on principle, and according to the weight of authority, a restriction, whether by way of condition or of devise over, not forbidding alienation to particular persons or for particular purposes only, but against any and all alienation whatever during a limited time, of an estate in fee, is likewise void, as repugnant to the estate devised to the first taker, by depriving him during that time of the inherent power of alienation. . *Roosevelt* v. *Thurman,* 1 Johns. Ch. 220 ; *Mandlebaum* v. *McDonell,* 29 Michigan,

77; *Anderson* v. *Cary*, 36 Ohio St. 506; *Twitty* v. *Camp*, Phil. Eq. (No. Car.) 61; *In re Rosher*, 26 Ch. D. 801.

The cases most relied on, as tending to support a different conclusion, are two decisions of this court, not upon devises of real estate, but upon peculiar bequests of slaves, at times and places at which they were considered personal property. *Smith* v. *Bell*, 6 Pet. 68; *Williams* v. *Ash*, 1 How. 1.

In *Smith* v. *Bell*, the general doctrine was not denied; and the decision turned upon the construction of the words of a will by which a Virginia testator bequeathed all his personal estate (consisting mostly of slaves) to his wife "to and for her own use and benefit and disposal absolutely; the remainder of said estate, after her decease, to be for the use of" his son. This was held to give the son a vested remainder, upon grounds summed up in two passages of the opinion, delivered by Chief Justice Marshall, as follows: "The limitation in remainder shows that, in the opinion of the testator, the previous words had given only an estate for life. This was the sense in which he used them." 6 Pet. 76. "The limitation to the son on the death of the wife restrains and limits the preceding words so as to confine the power of absolute disposition, which they purport to confer of the slaves, to such a disposition of them as may be made by a person having only a life estate in them." 6 Pet. 84.

In *Williams* v. *Ash*, a Maryland testatrix bequeathed to her nephew all her negro slaves, naming them, "provided he shall not carry them out of the State of Maryland, or sell them to any one; in either of which events I will and devise the said negroes to be free for life." One of the slaves was sold by the nephew; and, upon petition against the purchaser, was adjudged to be free. As stated by Chief Justice Taney, in delivering the opinion of the court, and recognized in the statute of Maryland of 1809, c. 171, therein cited, "By the laws of Maryland, as they stood at the date of this will, and at the time of the death of the testatrix, any person might, by deed or last will and testament, declare his slave to be free after any given period of service, or at any particular age, or upon the performance of any condition, or on the event of any con-

tingency." 1 How. 13; 3 Kilty's Laws. The condition or contingency, forbidding the slaves to be sold or carried out of the State, was, as applied to that peculiar kind of property, a humane and reasonable one. The decision really turned upon the local law, and appears to have been so understood by the Court of Appeals of the State in *Stewart* v. *Williams*, 3 Maryland, 425. Chief Justice Taney, indeed, going beyond what was needful for the ascertainment of the rights of the parties, added: "But if, instead of giving freedom to the slave, he had been bequeathed to some third person, in the event of his being sold or removed out of the State by the first taker, it is evident upon common law principles that the limitation over would have been good," citing *Doe* v. *Hawke*, 2 East, 481. But the case cited concerned an assignment of a leasehold interest only, and turned upon the construction of its particular words, no question of the validity of the restriction upon alienation being suggested by counsel or considered by the court; and the dictum of Chief Justice Taney, if applied to a conditional limitation to take effect on any and all alienation, and attached to a bequest of the entire interest, legal or equitable, even in personalty, is clearly contrary to the authorities. *Bradley* v *Peixoto*, 3 Ves. Jr. 324; *S. C.* Tudor's Leading Cases on Prop erty (3d ed.) 968, and note; *In re Dugdale*, 38 Ch. D. 176 *Corbett* v. *Corbett*, 13 P. D. 136; *Steib* v. *Whitehead*, 111 Ill 247, 251; *Lovett* v. *Gillender*, 35 N. Y. 617.

The case at bar presents no question of the validity of a proviso that income bequeathed to a person for life shall not be liable for his debts, such as was discussed in *Nichols* v. *Levy*, 5 Wall. 433, in *Nichols* v. *Eaton*, 91 U. S. 716, and in *Spindle* v. *Shreve*, 111 U. S. 542. In *Steib* v. *Whitehead*, above cited, the Supreme Court of Illinois, while upholding the validity of such a proviso, said: "We fully recognize the general proposition that one cannot make an absolute gift or other disposition of property, particularly an estate in fee, and yet at the same time impose such restrictions and limitations upon its use and enjoyment as to defeat the object of the gift itself, for that would be, in effect, to give and not to give, in the same breath. Nor do we at all question the general prin-

ciple that, upon the absolute transfer of an estate, the grantor cannot, by any restrictions or limitations contained in the instrument of transfer, defeat or annul the legal consequences which the law annexes to the estate thus transferred. If, for instance, upon the transfer of an estate in fee, the conveyance should provide that the estate thereby conveyed should not be subject to dower or curtesy, or that it should not descend to the heirs general of the grantee upon his dying intestate, or that the grantee should have no power of disposition over it, the provision, in either of these cases, would clearly be inoperative and void, because the act or thing forbidden is a right or incident which the law annexes to every estate in fee simple, and to give effect to such provisions would be simply permitting individuals to abrogate and annul the law of the State by mere private contract. This cannot be done." 111 Ill. 251.

The restraint, sought to be imposed by the nineteenth clause, upon any alienation by the brother or by the nephew of the share devised to him in fee, being void for repugnancy, it follows that upon such alienation, or upon an attempt to alienate, his estate was not defeated, and no title passed under the devise over, either to the nephew in the share of the brother, or to the daughter or her children in the share of the brother or of the nephew, and therefore nothing passed by the daughter's deed to her husband.

For the reasons already stated, the appeal of the nephew, Ira Couch, from so much of the decree below, as declared the legal title under the residuary devises to have vested at the expiration of twenty years from the testator's death, is well taken; and the equitable estate in fee in one fourth of the residue of the testator's property, having vested in Ira Couch from the death of the testator, passed by his deed of assignment to Dupee, and by mesne conveyances back to him.

The various alienations of the share of the brother, James Couch, require more consideration.

4. The appellant Potter claims the share of James Couch under proceedings against him by his creditors, at law and in equity, the effect of which depends upon the statutes of Illinois.

As we have already seen, the legal title in fee was vested in the trustees, not under a passive, simple or dry trust, with no duty except to convey to the persons ultimately entitled; but under an active trust, requiring the continuance of the legal title in the trustees to enable them to perform their duties; and until the trustees had divided the property, either by conveying the lands to the residuary devisees, or by selling them and distributing the proceeds among those devisees, James Couch had only an equitable interest in the testator's whole estate, and no title in any specific part of his property, real or personal. Such being the facts, it is quite clear that the trust was not executed, so as to vest the legal title in him, by the statute of uses of Illinois. Hurd's Rev. Stat. 1877, c. 30, § 3; *Meacham* v. *Steele*, 93 Illinois, 135; *Kellogg* v. *Hale*, 108 Illinois, 164.

It is equally clear that such an equitable interest was not an estate on which a judgment at law would be a lien, or an execution at law could be levied, under the Illinois statute of judgments and executions, although the term "real estate," as used in that statute, is declared to include "lands, tenements, hereditaments and all legal and equitable rights and interests therein and thereto." Hurd's Rev. Stat. c. 77, §§ 1, 3, 10; *Brandies* v. *Cochrane*, 112 U. S. 344; *Baker* v. *Copenbarger*, 15 Illinois, 103; *Thomas* v. *Eckard*, 88 Illinois, 593; *Howard* v. *Peavey*, 128 Illinois, 430.

By the chancery act of Illinois, "whenever an execution shall have been issued against the property of a defendant, on a judgment at law or equity, and shall have been returned unsatisfied, in whole or in part, the party suing out such execution may file a bill in chancery against such defendant, and any other person, to compel the discovery of any property, or thing in action, belonging to the defendant, and of any property, money, or thing in action, due to him, or held in trust for him, and to prevent the transfer of any such property, money or thing in action, or the payment or delivery thereof to the defendant; except when such trust has in good faith been created by, or the fund so held in trust has proceeded from, some person other than the defendant himself." Hurd's Rev. Stat. c. 22, § 49.

This statute, as has been adjudged by this court, establishes a rule of property, and not of procedure only; and applies to all cases where the creditor, or his representative, is obliged, by the nature of the interest sought to be reached, to resort to a court of equity for relief, as he must do in all cases where the legal title is in trustees, for the purpose of serving the requirements of an active trust, and where, consequently, the creditor has no lien, and can acquire none, at law, but obtains one only by filing a bill in equity for that purpose. The words " in trust," as used in the exception or proviso, cannot have a more restricted meaning than the same words in the enacting clause. *Spindle* v. *Shreve,* 111 U. S. 542, 546, 547; *Williams* v. *Thorne,* 70 N. Y. 270, 277; *Hardenburg* v. *Blair,* 3 Stew. (30 N. J. Eq.) 645, 666.

As the only title of James Couch in the property devised was an equitable interest which could not lawfully have been taken on execution at law against him, and as the trust was an active trust, " in good faith created by," and " the fund so held in trust proceeded from," the testator, " a person other than the defendant himself," the letter and the spirit of the statute alike require that this equitable interest should not be charged for his debts.

It follows that neither the judgments and executions at law, nor the suits in equity, against James Couch, gave any lien or title to his creditors; and that the deed from him to a receiver was wrongly ordered by the state court in which one of the suits was commenced, and was rightly set aside by the Circuit Court since the removal of that suit.

5. The appellant Hale claims the share of James Couch under a deed from him and his wife. The interest conveyed by that deed being an equitable interest only, Hale requires the aid of a court of equity to perfect his title, and would have to seek it by cross bill, but for the order of the Circuit Court that each answer should be taken as a cross bill. The real consideration of that conveyance was an agreement by which Hale promised to buy up the existing judgments against James Couch, to sell the interest conveyed by the deed of James and wife, and to pay to the wife one half of the net proceeds. In

fact, he bought up some of the judgments only, and sold those again, and never performed his agreement in this or any other particular. Consequently, he is not entitled to the affirmative interposition of a court of equity to obtain the interest included in the deed. *Towle* v. *Ambs*, 123 Illinois, 410.

6. It remains only to consider the contention that by the instrument of January 8, 1877, the devisees entered into an agreement by which they took the whole estate as tenants in common, and rendered any division unnecessary, and therefore all the duties of the trustees ended, and the legal title vested in the residuary devisees, at the expiration of the twenty years. Undoubtedly, those interested in property held in trust, and ultimately entitled to the entire proceeds, may elect to take the property in its then condition, and to hold it as tenants in common ; but the acts showing an intention so to take must be unequivocal, and must be concurred in by all the parties interested. *Young* v. *Bradley*, 101 U. S. 782 ; *Baker* v. *Copenbarger*, 15 Illinois, 103 ; *Ridgeway* v. *Underwood*, 67 Illinois, 419 ; 1 Jarman on Wills (4th ed.) 598–602. In the present case, the instrument in question cannot have this effect, for two reasons : In the first place, it manifested no intention to alter in any way the existing titles of the residuary devisees, either as being legal or equitable, or as being in severalty or in common; but was simply a power of attorney, the object of which was to continue Wood's management of the estate as a whole, as under the twenty-first clause of the will. In the next place, the instrument was not executed by or in behalf of all the parties in interest, inasmuch as it was not executed by any one authorized to affect the share devised for the daughter's benefit for life, and to her children or appointees after her death. By the clear terms of the twentieth clause of the will, neither the daughter nor her husband had any authority to do this; and her trustees had no power over her share until it had been conveyed or set apart to them by the trustees under the will; and if the trustees under the will were duly constituted trustees for her and for her children (which is disputed) they had no greater power in this respect, before the estate was divided, than distinct trustees would have had.

The result is, that the decree of the Circuit Court must be affirmed in all respects, except that the declaration therein as to the time when the legal estate of the residuary devisees vested must be modified in accordance with the opinion of this court.

This conclusion, by which the brother and the nephew take the shares originally devised to them, carries out the intention of the testator, though probably not by the same steps that he contemplated.

*Decree accordingly : the appellants in each appeal, except James Couch, to pay one fourth of the costs, including the cost of printing the record.*

MR. JUSTICE BREWER and MR. JUSTICE BROWN took no part in the decision of this case.