WILLIAM H. WATLAND et al., Appellees, v. F. L. GOOD, Appellant.

**TRUSTS:** Trustee's Power to Lease. A testamentary trustee, though invested with legal title, and in actual possession and occupancy of the property with the consent of the trust beneficiaries, and though the property be a homestead, may not, in the absence (1) of necessity therefor and (2) of the consent of the trust beneficiaries, and especially after the trust period has expired and the right to distribution among the bene-
,ficiaries has matured, execute a valid lease of the trust property, either in an individual or a trust capacity.

*Appeal from Woodbury District Court.*—W. G. SEARS, Judge.

OCTOBER 26, 1920.

ACTION in equity, by the heirs of Osman Watland, deceased, and by his widow and sole surviving trustee, under the will of said Osman, against defendant, to cancel a certain written lease made between Mary Watland and

defendant, on the ground that the widow had no authority to execute the lease, because made after the termination of the trust, and without the consent of the heirs. Plaintiffs further allege that she was induced to execute the lease by the fraudulent pretense by defendant that the optional clause for renewal was in her favor, and that defendant has claimed and still claims the right to renew said lease at the end of each six months. The widow, as trustee, also asked that she be authorized to distribute the property by making deeds to the heirs. An injunction was prayed, to enjoin defendant from dispossessing the widow of a part of the premises occupied by her, and for general equitable relief. There was a decree for plaintiff, as prayed. Defendant appeals.—*Affirmed.*

*E. E. Wagner,* for appellant.

*Carter & Carter,* for appellees.

PRESTON, J.—Deceased left other property, which had been disposed of, under the provisions of the will, about six years before,—at least, it is not in controversy in this case. The property in controversy is a ten-room residence in Sioux City, which was the homestead of deceased and his family, prior to his death, and was occupied as such by the widow and perhaps some of the children, for a time. At the time of the death of the testator, some of the children were minors, and, at the time of the trial, Mary Watland, the mother, was guardian for one of them. The lease covered the entire property, and the rental was $45 per month, but the widow desired to retain three rooms, because she was there alone, and needed someone in the house; and it was orally arranged that she should pay defendant $20 per month in the summer and $25 in the winter therefor, or the rent reduced that much. The widow and one Elliott were made trustees under the will. Elliott died before the lease in question was made. The lease was not executed or signed by the widow as trustee or guardian, but individu-

ally. She was in possession under the circumstances before indicated. The lease was renewed, from time to time, for six-month periods, as provided in the lease, by defendant's giving notice thereof, as required. Later, the defendant served notice on the widow of his intention to terminate her occupancy of the three rooms. Soon thereafter, this suit was brought. At the time the lease was made, some of the children lived at a distance, or were temporarily absent from the state; others were in the army. They did not know of the execution of the lease by their mother, and did not consent thereto. After the execution of the lease, some of them knew by correspondence, or otherwise, that someone was occupying a part of the house, but did not know there was a lease. One of the plaintiffs says he first saw the lease about July or August, 1919, after he had returned from the war in May, when his mother thought her copy of the lease was lost, and defendant submitted a photograph of his copy, defendant refusing to produce his original; that he disapproves of the lease, and is demanding his share of the property; that he is kept out of it by the occupancy of defendant. Others of plaintiffs' witnesses give similar testimony. The lease was executed after the eight-year trust period in the will. The heirs, or some of them, were willing that the mother should occupy the premises as her homestead, for a time at least, or until she got the children through high school. There is evidence tending to show that the rental value of the property was $75 to $100 per month, and that the small rent paid was used to keep up the property, which was not self-sustaining. The widow testifies that she intended to sell the property, and that she told defendant that, if the war closed, and her boys came home, she wanted to sell the property, and would not tie it up for any great length of time, not more than six months at a time; that defendant told her she could sell it just the same, notwithstanding the lease. Testator died June 27, 1906, and his will was executed the day before, which provides, among other things:

"I give devise and bequeath all my property of every

kind and character, real, personal and mixed, to my wife, Mary J. Watland, and my son-in-law, John Elliott, to be held by them in trust for the term of eight years from the date of my decease, but with full and complete power of disposal and substitution, or reinvestment according to their judgment for the following purposes:

"I have eight children, all equally dear to me, and of about the ages following: Jesse M. Watland, 30 years old; Mrs. Bessie Elliott, 27 years old; Elsie M. Watland, 24 years; William H., 15 years old; Maurice O., 14 years old; Walter K., 10 years old; Frances L., 8 years old, and Ralph C., 5 years old. I desire that my property shall be held by said trustees for said term of eight years, and the income thereof applied to the support of my said wife and minor children, and the education of my said minor children, to the end that my said minor children shall, as nearly as may be, have the same advantages that my older children had during their minority; and at the end of said term of eight years I will and desire that my property shall be distributed to my wife and all my children in the same manner and proportions as by law provided as if no will had ever been made, that is, to my wife, one third, and the remaining two thirds to my said children in equal parts: provided if any of my said children shall have deceased at that time without issue then the property shall go in equal parts to the surviving children, but if any of my said children shall have died leaving issue then such issue shall take the part that would otherwise have gone to the parent if living; and when such distribution shall have been made the property received by each shall be held to such distributee and to his or her heirs forever in fee.

"3. If at any time the income from my said property shall prove insufficient for the comfortable support of my said wife and minor children, and the proper education of my said minor children according to the judgment of my said trustees then said trustees are thereby directed and empowered to dispose of such portion of said property as may be necessary from time to time for such support and

education; and if at any time my said trustees should deem it for the best interest of my estate that any portion of my property should be disposed of and the proceeds reinvested, in other property, then they shall have the right and power to dispose of such property, giving good and perfect title thereto by their joint deed, as such trustees without the order of court therefor, and the title of the property so conveyed shall not be affected in the hands of the grantee by any acts of said trustees in handling the proceeds thereof."

The will also makes the parties named as trustees, the executors.

The lease, executed June 1, 1918, provides, among other things, in addition to provisions before referred to:

"It is further agreed by the party of the first part that party of the second part, or his legal representatives can underlet said premises or any part thereof, or assign this lease without the written assent of the party of the first part had hereto.

"And it is further covenanted and agreed, between the parties aforesaid that lessee has the privilege of further renewals of this lease for similar periods of six months each at the same terms at his option, not to exceed six in all, by giving notice to lessor thereof one month before the expiration of the preceding period."

The notice given defendant to require plaintiff to vacate the three rooms by August 1st, was given June 23, 1919. This suit was brought in August, 1919, so that there would be about 2½ years to run, if defendant renewed six times. The testimony of defendant as to the conversations is somewhat different from that of plaintiffs, but not materially so. He says that Mrs. Watland became hysterical, when he served notice on her to vacate, and that she said she was a widow and that, her boys being away, he had taken advantage of her, and that she asked to be released, which he refused to do.

The principal contention of appellant, as we understand it, is that Mrs. Watland had authority to make a binding

lease, because, as they say, under the will, she, as sole surviving trustee, was vested with the title in fee; and that, because it was the homestead and she was in possession, with the knowledge, consent, and acquiescence of plaintiffs, they cannot say that the mother did not have authority to make the lease.  He complains, also, that the court erred in authorizing the trustee to distribute and divide the property, and execute deeds therefor.

1.  Briefly, as to the occupancy by the widow as her homestead, appellant cites Code Section 2985, and *Floyd v. Mosier,* 1 Iowa 512.

It is said in the *Floyd* case that, under the statutes then in force, the surviving husband or wife has a right to continue the possession and occupy the homestead until it is otherwise disposed of, according to law; and that, if there is no survivor, then it descends, in the absence of a will, to the issue, etc.  That was an action by the widow to recover rent for a part of the 40 acres which she had rented to the defendant.  To the same effect, see *Fehd v. City of Oskaloosa,* 139 Iowa 621, 624.

In the instant case, doubtless, as between plaintiff and defendant, she could maintain an action for rent for the time defendant actually occupied the premises, under the lease signed by her, for the reason that the tenant may not deny the landlord's title.  But it does not follow that the heirs are bound by a contract by her, contrary to the will, without their authority, and without their knowledge or consent.  In the *Floyd* case, there was no will.  The real question in the *Floyd* case was as to the competency of children to testify.  In the instant case, there is no claim that the widow had elected to take her homestead rights, or distributive share.  She was claiming only under the will.  Incidentally, it appears that the property had been the homestead, prior to the death of the testator, and that she occupied it during the trust period of eight years, and that the children permitted her to use the property, or a part of it, for a time thereafter, but that there was no agreement by them that she should occupy it for any

definite time after the eight years; so that, after the eight-year period, they had the right to demand a division of the property, according to the terms of the will.

2. To sustain the contention that, under this will, Mary Watland took the title in fee, appellant cites *In re Estate of Petranek,* 79 Iowa 410; *Olsen v. Youngerman,* 136 Iowa 404; *Potter v. Couch,* 141 U. S. 296 (35 L. Ed. 721). The *Petranek* case was an action to remove two persons alleged to have been trustees, and the holding was that persons to whom money is bequeathed, but who are charged with the duty to use it for the benefit of others, are, considered in their relation to the testator and the will, legatees, but, considered in their relation to the beneficiaries of the property, they are trustees, and as such, upon their refusal to act, they may be removed by the court, etc. That has little, if any, bearing here, since this will names the persons as trustees. In the *Olsen* case, the holding was that a court of equity, under some circumstances, has power to dissolve a trust before the expiration of a term for which created; but in that case, where the bequest was to trustees, with absolute control and power of disposition, the income from which was to be paid, part to the donee and the balance to his children, and, upon the death of the donee, any portion then remaining was to go to his children, or the survivor of them, the trust was an active and existing trust, which would not be terminated prior to the death of the donee. In the *Potter* case, a trust was created for 20 years after the death of the testator. The specific provisions of the will are too long to set out herein, but the holding was that the legal title vested in the executors, and did not terminate at the end of 20 years from the death of testator, but continued in them until they had, by sale or otherwise, settled the estate and made the division and conveyed the shares. We do not understand appellees to contend otherwise, nor do they contend that the legal title is not in the trustee. Indeed, in the present case, the heirs ask that the mother, as trustee, be required to divide the property and execute deeds, and she, as trustee, asks

that she may do so. True, the title vests in the trustee, coupled, however, with a trust. Mrs. Watland, who, alone and as an individual, executed the lease, did not, as an individual, take the fee-simple title. Appellees do contend that a lease after or beyond a period of the trust, in the absence of equitable circumstances or necessity, is void as to the excess period of time beyond the expiration of the trust (citing *Hubbell v. Hubbell,* 172 Iowa 538; *In re Hubbell Trust,* 135 Iowa 637). The cases are not quite in point, perhaps, because, in that case, the lease was for 99 years, which would extend unreasonably beyond the period of the trust. Some of the rules, however, governing trust estates are given, one of which is that trustees may lease, for such reasonable terms as are customary and essential to the care of and to procure a reasonable income from the property. In the instant case, the income going to the estate and the heirs was much less than its worth, and practically nominal. Another rule is that such terms should not, save on showing of reasonable necessity to effectuate the purposes of the trust, extend beyond the period the trust is likely to continue. In the instant case, there was no necessity for continuing the trust beyond the eight years. Another of the rules is that, only upon a showing of such reasonable necessity, when not given such power by the instrument creating the trust, are the trustees authorized to bind the estate so as to effectually deprive those ultimately entitled thereto, of the property itself. As said, there is no reasonable necessity in this case, and the trustee was, therefore, not authorized to bind the estate, and deprive these heirs of the property. Under this record, it would be detrimental to them to continue it. It was the duty of the trustee to act for the best interests of the heirs. The testator had some purpose in fixing the trust period at 8 years. Doubtless, one reason was that some of his children were very young. But whatever his reason, he had a right to so provide. At the end of the 8 years, the children had a right to demand a division; and, even though they did not do so immediately at the expira-

tion of the 8 years, they had a right to do so at any time thereafter. Equity regards that as done which ought to be done. If a trustee fails in this respect, the court will do it for them. We think the trustee, had she been attempting to act as such, instead of individually, had no authority to tie up a division of the property to the disadvantage of the heirs, indefinitely or for a term of years. The provisions of the lease seem to be all in favor of the defendant. It provides that he may assign the lease, and sublet the premises without her consent. Under this, he could, if the lease is valid, sublet the premises at a greatly increased rental, and thus speculate to the disadvantage of the heirs. The evidence shows that the rental values did increase after the execution of the lease. Again, the lease provides that there may be six renewals, or, in all, 3½ years. If the number of renewals was not limited, the lease could be continued indefinitely. If the trustee could tie up the property for 3½ years, why could she not do so for a much longer period, or indefinitely? The lease does not purport to have been made by Mrs. Watland as trustee or guardian, or in any capacity except as an individual. We think, then, that in so far as it is claimed that the heirs are bound by Mrs. Watland's act as trustee, they are not bound.

3. We are of opinion, too, that, under the record, the heirs are not bound by the act of their mother as an individual. We have seen that, though she was using a part of the property as her home, she was not claiming or acting under any homestead right. Appellees contend that the widow and children were tenants in common, and that a lease by one tenant in common of the entire estate is void as to cotenants (citing authorities). Appellant's answer to this is that, assuming that they are cotenants, the mother, in leasing the property, acted with the knowledge, consent, and acquiescence of the heirs, and that, therefore, they are bound. Enough has been said to show that the heirs did not have such knowledge, and that they did not consent to or acquiesce in the making of the lease. The

evidence is not sufficient to create an estoppel against the plaintiffs.

Appellant complains of that part of the decree authorizing the trustee to execute deeds, and divide the property. This does not concern him, if he did not have a lease binding upon the heirs. Under the will, it was the duty of the trustee to do so, and no reason is shown why the distribution or division should be longer delayed. We approve the decree of the district court, and it is—*Affirmed.*

WEAVER, C. J., EVANS and SALINGER, JJ., concur.