MARGARET ANN DICKSON, by her Guardian *ad litem* and others *v.* CHARLES McD. DICKSON and others.

A testator directed, after giving some pecuniary legacies to certain grandchildren which was a charge upon the whole of his estate, that his " real and personal property remain as a common stock for the family that now make their home here, subject, nevertheless, to any distribution which my executors hereinafter named may think proper to make:" *Held,* that all the living children of the testator, and the representatives of the deceased children, are tenants in common of all the real and personal estate, with partition postponed until circumstances should make it necessary. The separation of the family, and the death of some, and the sale of the interest of one, thereby letting into the family a new and disturbing element, is such a change of circumstances as makes a partition proper.

SPECIAL PROCEEDING to obtain a proper construction of the will of Wm. Dickson, deceased, heard and determined by his Honor, *Judge Mitchell,*, at Chambers in CALDWELL county, upon an appeal from the judgment of the Probate Judge, 27th of November, 1873.

The will of Wm. Dickson, under which plaintiffs and defendants claim, is in the following words:

" STATE OF NORTH CAROLINA, CALDWELL COUNTY.

In the name of God, Amen! I, William Dickson, of the county and State aforesaid, being weak in body, but of sound and perfect mind and memory, blessed be Almighty God for the same, do make and publish this my last will and testament in manner and form following, that is to say:

1st. My will is that my property be not exposed to public sale.

2d. My will is that my real and personal property remain as a common stock for the family that now make their home here. Subject, nevertheless, to any distribution which my executors, hereinafter named, may think proper to make.

3d. My will further is that my daughters, Isabella, Mary

Matilda, Mira Ann and Clarissa Caroline, shall have unmolested and exclusive privilege over all the domestic concerns of the house, so long as they remain here; they shall be provided for off the farm with provisions and everything necessary for their support.

4th. My will further is, that Eliza Abernathy have land enough annully to furnish provisions for her and family.

5th. My will further is, that my three grand-children, to wit: William Leonard, Margaret Charity and Joseph Harvey Dickson, that they shall have at their marriage, or becoming of lawful age, seven hundred dollars each.

6th. My will is that my superannuated black people shall be supported off the plantation as long as they shall live.

7th. I do hereby nominate, constitute and appoint my sons, Charles McDowell Dickson, James F. Dickson, William W. Dickson, and my son-in-law, James C. Horton, my executors," &c.

In the complaint of the plaintiffs, Margaret Ann, a grand-daughter of the testator, and J. F. Harper, the purchaser of the interest of one of the legatees in the estate of the testator, demand that the land be partitioned and allotted under the will to those entitled to it, and that an account of the rents and profits be taken, &c.

Defendants deny the right of the plaintiffs to demand a partition of the land devised in the will, and also their right to have a reference for an account.

From the decision of the Judge of Probate an appeal was taken, and his Honor, Judge Mitchell, upon the hearing, gave judgment:

" That the will of the testator, William Dickson, deceased, forbids the exposure of his property at public sale.

" That he directs his real and personal property remain as a common stock for the family that at the time of his death made their homes at his homestead domicil; subject, nevertheless, to any distribution which his executors might think

proper to make ; and the executors are *in loco parentis* in the distribution of the property.

" The daughters named in the third item of the will are clothed with the unmolested and exclusive privilege over all the domestic concerns of the house. So long as they remain at the homestead domicil, they shall be provided for off the farm with provisions and everything necessary for their support ; but any additional provision they can only receive from the executor representing the moral and parental obligation of the testator by virtue of the discretion given for that purpose.

" It is considered and adjudged that the lands mentioned and described in the complaint cannot be divided except by the official acts and delegated discretion of the executor.

" A reference is ordered to enquire and say what, if anything, is in arrears to the three grand-children—the children of the son Joseph."

From this judgment the plaintiff Harper appealed.

*Folk*, for appellant, submitted the following brief:

His Honor was of opinion, that the legal estate in the land is vested in the defendant, C. McD. Dickson, and that his brothers and sisters and their issue could only rely, for any bounty not expressly given by the will, on the moral and parental obligation which he might feel as standing " *in loco parentis*" by virtue of a discretion given him.

1st. The words of the will do not give the legal estate to the executor, but merely a naked power, if anything.

As far back as the reign of Henry the Sixth it was laid down, that if one devise that his executors shall sell his lands and die seized, his heir is in by descent, and the executors have only a power ; but that if one devise his lands to his executors to be sold, the freehold passes by the devise. Littleton says that if a man devise that his executors may sell his estate, it is a mere power in the executors and no interest, and therewith Sir Edward Coke, in his comment, agrees. (Thos.

Coke on Lit, vol. 2, p. 118.) (Sugden on Powers, Law Lib. Ed. vol. 1, p. 129, margin.)

In *Ferebee* v. *Proctor*, (2 Dev. & Bat. p. 439) the language of the will is: "I leave all my land, not given away, to be sold, and after my debts are paid, the residue of my estate to be divided between my wife, son and daughter. I nominate M. S. my executor."

In this case it was held, that no estate was given to the executor, but only a power to sell, coupled with a trust for the payment of the debts and legacies, and that the lands descended to the heirs at law, and remained unil divested by the exercise of the power. Here the power, if anything, is to distribute. Upon the death of the testator the land, either by act of law or by virtue of the devise, vested in the persons embraced by the word "family." The power being collateral, if existing cannot be destroyed either by petition or alienation, and the Court will not anticipate its exercise.

If the language was intended to give a naked power to distribute the land, the power is extinguished by the renunciation of three of the executors or death of James. If a power is given to two executors to sell, if one of them refuses or dies, it is clear that the survivor cannot sell. (Sugden on Powers, Law Lib. Ed. vol. 1, page 143, margin; Kent, vol. 4, p. 325. Washburne on Real Prop. Book 2, chap. 6, sec. 5, paragraph 22.) And although it is held, that if the power is coupled with a trust, or if given to executors generally, it will survive as long as the plural number remains or the words of the will can be satisfied, yet is equally clear that where it is a naked power, given to executors, *nominatim*, it will be extinguished by the death, renunciation or refusal to qualify of one or more of those named. (Sugden on Powers, Law Lib. Ed. vol. 1, p. 142;) Battle's Revisal, chap. 119, sec. 29, 2 Thos. Coke, p. 397. Statute 21st Henry VIII. interfered with these distinctions so far as powers to sell real estate are concerned, but naked power to distribute, to appoint, or to do any other act, remain precisely as they did at common law.

3d. If the legal title to the land, by virtue of the will, is vested in the persons composing the "family," the power given to the executor, even if it affects the land, is void. Every devise is a conveyance, and by the rules of the common law no restriction nor qualification could be annexed to a conveyance of land except a condition.

In consequence of this principle, a power embraced in any conveyance, not operating under the Statute of Uses, is void at common law, because repugnant to the preceding words of the conveyance. The intention of the testator, as declared by his Honor, could not be carried into effect without placing the legal estate in a trustee. By a proper construction of the language of the will, the land is devised to the children of the testator living at the date of the will. And this appears from considerations:

1. The word "family," used in a will, is a good word of purchase, and when uncontrolled by other expressions, its meaning is well defined by law.

The latin term "*familia,*" from *famulus,* a slave, a domestic servant servant, originally meant all the slaves belonging to one common master.

In its next sense, it meant a family or household, including wife, children, servants, and all others residing on the same premises, subject to the same head. (Bouvier's Law Dict.)

In its legal sense, when used with reference to real estate, it means the heirs-at-law. When used with reference to personality, it means those who take under the statute of distributions; its meaning may be extended by the context to embrace others, but will never be allowed to exclude children, unless controlled by express words or plain and necessary implication. (Williams on Executors, vol. 2, pp. 963 and 964.

In *Ferebee* v. *Procter, supra,* the words were, "I *leave* all my land, not given away," which excluded all the land devised, and the sale by the executor would amount to the nomination of a person who would then be in, under the will. Here the

devise is "to the family, that now make their homes here, which breaks the descent and distinguishes the cases.

2. An heir-at-law shall not be disinherited by a will, unless there are express words, or a plain and necessary implication to that effect, for the title of the heir is by descent, the rules of which are certain, and not to be defeated by dubious expressions. (Cruise Dig., vol. 2, p. 171, *Ferebee* v. *Procter, supra.*)

The only expressions in the will, which can have the effect of excluding any of the children, are the directions that the property be not sold, and that it remain as a common stock, subject to such distribution, &c. These provisions clearly refer to the personal estate, the word "distribution" in its natural and popular signification, as well as in its legal sense, means a dealing or division, and is commonly used to express the division of the personal effects of an intestate among his next of kin. The proper words to be used with reference to land, both ordinarily and legally, would be "division" or "partition."

3. The rule is, that the construction of a will, in order to ascertain the intention, the Judge should put himself in the place of the testator, and first ascertain the condition of his family, and the character and nature of the property which is the subject of the will.

What was the condition of the testator's family and property here?

Sarah Horton had married and left him. Joseph had died, leaving three children, to whom legacies are bequeathed. Mrs. Eliza Abernethy was living on a plantation belonging to him, and adjoining his homestead, and all the rest of his children, including James, who has since died, and William, since removed, were living on his homestead.

Under these circumstances, what is the meaning of the expression "a common stock for the family that now make their homes here"?

Clearly, the testator supposed that the children not otherwise provided for would continue to reside upon the homestead as they had done before, and cultivate the farm with the common

farming stock, and the provisions contained in the will were intended to apply only so long as this state of things continued.

It did not occur to the testator that a change of the circumstances and condition of his family would ever render it necessary that the homestead should be divided, that his children, by having separate families of their own, should need separate establishments.

The bulk of his personal property no longer exists; the condition of his family has undergone a revolution and assumed a *status* which renders the provisions of the will inapplicable; therefore all his children are tenants in common.

By giving the will this construction, the rules of the law are preserved intact, and arbitrary inferences rendered unnecessary; and the absurdity of placing Charles McDickson *in loco parentis* over his brother in-law and brothers, co-executors and his sisters, is avoided, and the testator discharges his moral and parental obligations to all his children alike.

But adopt the construction of his Honor, and Sarah Horton, for whom her father had an affection, and in whose husband he had confidence, for he appoints him executor, is totally disinherited, as are also William Dickson, his executor, and the infant daughter of James Dickson, his executor, and all the other children are left without sustenance or remedy except by entreaty or request of Charles McD. Dickson, a striking modern instance of the *jus precarium.*"

Thus the testator discharges his moral and parental obligations to his children by leaving all but one practically unprovided for, while, at the same time, he is so observant of the duties of the head of a family as to provide for his superannuated negroes.

*Armfield,* contra, submitted :

No will is within the statute but that which is in writing ; at the same time, however, courts of law, though precluded from ascribing to the testator any intention not expressed in his will, *admit their obligation to give effect to every intention*

*which the will, properly expounded, contained.* See Wigram on Extrinsic Evidence, Library of Law and Equity, 2d series, vol. 1st, page 3 of second part. In this will there is no uncertainty either as to what is devised and bequeathed, or who is take. See Jarman on Wills, 328. "*Id certum est quod certum redi potest;*" therefore a devise "to such persons as I shall be in copartnership with at the time of my death," it appearing from extrinsic evidence, that testatrix was in partnership in business at the time of making the will; held, not void for uncertainty. Jarman on Wills, marginal page 327.

"Where a testator devised certain estate by name, together with his farming stock and furniture, to his beloved wife to sell to discharge all his creditors, and he constituted his wife and another person his executors, whom he appointed to sell and dispose of his estate and chattels in such manner as they should jointly agree upon, or not to sell them, if it seemed most advisable to keep them, or in any way they should think proper, so that every creditor had his money, and if sold, *all overplus to my wife toward her support and her family.*" This bequest was sustained by Lord Cotterham, who also decided that the executors were trustees for the children. See *Wood* v. *Wood,* in Williams on Executors, page 819; see also *Holoway* v. *Holoway,* 5 Vesey Rep. 401, referred to in Williams on Executors, 829.

By our statute of wills, it is enacted that "when real estate shall be devised to any person, the same shall be held and construed to be a devise in fee simple, unless such devise shall, in plain and express words show, or it shall be plainly intended by the will, or some part thereof, that the testator intended to convey an estate of less dignity. See Revised Code, chap. 119, sec. 26.

READE, J. The will of William Dickson, deceased, which we are called upon to construe, is one of those short sighted instruments common to testators, who suppose that all their affairs will remain as they are; or that there will be only such

changes as their desires suggest; and so dispose of their estates without the aid of counsel.

The testator had nine living children, and three grand-children of his tenth child, who was dead. There is nothing in his will to indicate that he had any special favorite among his children, or that there was any reason why he should have. All his living children, except one, lived with him in the same house, or upon his land, and most of them in the house with him; and it seems to have been his wish to provide for all of them in that way which would suit them best.

If we assume what is probable, that his daughter Sarah married and moved to herself, he gave her such things as his circumstances justified, and as were necessary for her comfort, then we find all his children provided for until such time as circumstances might require his estate to be divided. To the three children of his deceased son he gave pecuniary legacies; to Mrs. Abernathy, his daughter, who lived to herself, he gave the use of so much of his land as was necessary for her support; and to all his other children who lived in the house with him, he gave the use of his homestead to be occupied together, the daughters having the management in the house, and his son Charles to have the management out of doors. There was no purpose to give the estate to Charles either for himself entirely, or for himself with a *discretion* to give the others much or little, as suited him. But the purpose was to have the family establishment kept up; how long, he could not tell; or what was to come afterwards he could not foresee; and had not capacity to provide for; and therefore he left it to circumstances.

1. The three children of Thomas are provided for by pecuniary legacies which are a charge upon the whole estate, and are to be paid. And they have no further interest in the estate.

2. All the living children of the testator, and the representatives of the deceased children are tenants in common of all the real and personal estate with partition postponed until circumstances should make it necessaro. The separation of the

family, and the death of some, and the sale of the interest of one, thereby letting into the family a new and disturbing element, is such a change of circumstrnces as makes a partition proper. There must, therefore, be a partition of the whole estate, other than the pecuniary legacies to the children of Thomas, into nine equal shares, giving to each of the testators living children, and the representatives of his deceased children, one share, the purchaser of William's share taking his share.

3. There will be an account of the rents and profits. How the rents and profits are to be used and accounted for, will more properly be considered when the report comes in. We remark, only generally, that it seems not to have been the intention of the testator that a strict account should be kept while the family were together. Unfair or extravagant advantages will, however, not be allowed.

There is error. This will be certified.

PER CURIAM.                    Judgment accordingly.