## TESTAMENTARY PROVISIONS IN RESTRAINT OF ALIENATION REPUGNANT TO THE POLICY OF THE LAW.

Common Pleas Court of Hamilton County.

FLORENCE C. MURDOCK v. JOHN CARLISLE LORD ET AL.

Decided, March, 1913.

*Partition—Fee Simple Title Vests, When—Under a Will Postponing Sale or Division of the Property Until After the Death of the Last of the Devisees—Full Authority in a Chancellor to Order a Sale to Prevent Waste—Wills.*

A testamentary provision that the property devised shall not be partitioned or sold until after the decease of the last survivor of the children of the testator is rendered void by the restraint which it imposes upon alienation, and an owner in fee simple of any part of the premises so devised may maintain an action in partition.

*Clore, Dickerson & Clayton,* for the demurrer.
*Healy, Ferris & McAvoy, Graham P. Hunt* and *Gordon, Morrill & Ginter,* contra.

MAY, J.

On July 1, 1911, the plaintiff in this action filed her petition, alleging that she is the owner in fee simple of an undivided one-forty-second part of the real estate situated at the southwest corner of Fourth and Walnut streets, known as the Carlisle Building.

Plaintiff further alleges that in addition to her ownership in fee simple she is also the owner of a life estate for and during the term of her natural life in an undivided one-seventh of said premises, and that she also has a contingent interest with

certain other defendants herein in the undivided one-seventh part of said premises, subject to the life estate of George W. Carlisle.

The plaintiff claims title under the will of George Carlisle, a copy of which is attached to the petition and made part thereof, marked "Exhibit A." George Carlisle died in March, 1863, and his last will and testament was probated on or about the 27th day of March, 1863. Under the terms of the third clause of this will, there was given and devised to his wife, Sarah B. Carlisle, for the term of her natural life, the real estate at the southwest corner of Fourth and Walnut streets, known as the Carlisle Building, subject to the following:

"But the devise of this real estate to my wife for her life is made expressly subject to keeping the building thereon at all times fully insured and in good repair, and in case of loss or damage by fire or otherwise to rebuild the same, and to the providing by my wife a home and maintenance sufficient and suitable for my daughters, Maria R. Carlisle, Susan J. Carlisle, Fanny Carlisle, Clara G. Carlisle and Florence Carlisle, and each of them so long as they respectively remain unmarried, and the completion of the education of my two youngest daughters, Clara and Florence, and the life tenure of said real estate is hereby made expressly subject to keeping the building thereon at all times fully insured and in good repair, and to the providing of said home, maintenance and education for my daughters, and the expenses of such insurance, maintenance and education is hereby made a lien and charge upon said life estate of my said wife."

There are other provisions in this same clause, which have no bearing on this controversy. Clause fifth of the will reads as follows:

"After the termination of the life estate herein given to my wife in the property on the southwest corner of Fourth and Walnut streets, said property is to pass to all of my children in equal proportions, for the term of their natural lives, and at the decease of my children, said property shall pass to the heirs of my children respectively in fee simple; it being my will that said property shall not be partitioned or sold until after the decease of the last survivor of my children, but be held entire, undivided and unsold until all of my children shall have deceased."

The plaintiff further sets out in her petition that the widow, Sarah B. Carlisle, died in the year 1882; that Susan J. Carlisle married Menton E. Lord, and that at her death, in May, 1907, she left as her sole heirs at law the defendants, John Carlisle Lord, Sarah C. L. Eaton and Florence L. King; that Maria R. Carlisle, who had married Charles E. Brown Sequard, died in 1874, leaving as her sole heir at law Charlotta M. Brown Sequard, who afterwards married Richard McCausland; that Fanny Carlisle married Charles Mendenhall; that Fanny Carlisle is still living and that she has living five children, whose names are set out in the caption of the petition; that Clara G. Carlisle died in the year 1884, unmarried, leaving as her sole heirs at law, John Carlisle, George K. Carlisle, Fanny C. Mendenhall, Florence C. Murdock, Susan J. Lord and Charlotta M. Brown Sequard; that John Carlisle died in August, 1903, leaving the defendant, Morten Carlisle, as his sole heir at law; that George W. Carlisle is still living and is now about seventy-one years of age and unmarried.

The plaintiff, Florence C. Murdock, further states that she married James R. Murdock and that she has two children, who are defendants and whose names are set out in the caption of the petition.

The plaintiff further alleges that upon the death of Clara G. Carlisle, one of the seven children of George Carlisle, and who was entitled to a life estate in the Carlisle Building, with remainder to her heirs, she became the owner of an undivided one-forty-second part of the premises described in the petition in fee simple.

The plaintiff further sets out in her petition the manner in which the other defendants named therein became vested to title in the premises, to-wit: John C. Healy, Florence C. Kell, Florence C. Kell, executrix of the last will and testament of Wesley M. Cameron, the Cincinnati Trust Company, and Eliza Dorsey.

The plaintiff's petition contains many allegations setting forth disagreements that have arisen among the owners of the Carlisle Building, and the difficulty that existed regarding the proper management of said building.

It is unnecessary to consider any of these allegations because the plaintiff in this case, on January 17, 1913, filed her supplemental petition in which she set forth that since the filing of the original petition the Carlisle Building and all the improvements described in the petition were destroyed by fire and makes the further allegation that said property now produces no rents or profits or income of any kind with which to pay taxes now due or which shall hereafter be assessed against the property. In this petition she alleges that the interest of the Cincinnati Trust Company has been conveyed to the Provident Savings Bank & Trust Company and asks that said company be made a party defendant. Plaintiff renews her prayer for partition and for all other equitable relief.

To this petition, all the parties in interest, except Florence C. Kell individually and Florence C. Kell, as executrix of the last will and testament of Wesley M. Cameron, deceased, have filed answer and cross-petitions. All of these defendants, with the exceptions just noted, join in the plaintiff's prayer for partition, and that in the event that the property described can not be set off in severalty in the proper proportion, that the property be sold and that in case of sale the proportionate share of the proceeds be set off to them respectively, and for such other relief as the nature and equity of the case may require.

The answers and cross-petitions of several of the life tenants, who are made parties defendants, contain the additional prayer that such parts of the proceeds, in the event the property is sold, of such portion in which the answering defendant has a life estate, may be invested under order of court and the income paid to such tenant during his life, and at his death the same may be divided among his respective heirs in accordance with the provisions of the will of George Carlisle.

The plaintiff sets out the title of Florence C. Kell and Florence C. Kell, executrix under the last will and testament of Wesley M. Cameron, showing that said Florence C. Kell, as executrix of Wesley M. Cameron, is the owner of the life estate of John Carlisle and George W. Carlisle, respectively, in said property, and the owner of one-forty-second interest in fee, the interest inherited by George W. Carlisle on the

death of his sister, Clara G. Carlisle, and of two-thirty-fifths interest in said property, the same being conveyed to her in fee simple by Morten Carlisle after the death of his father, John Carlisle.

On October 14, 1912, Florence C. Kell, individually, and as executrix, filed her demurrer to the plaintiff's petition, setting out the following grounds:

1. That the plaintiff has no legal capacity to maintain this action.

2. That the facts set forth in the petition do not constitute a cause of action.

3. That under the facts set forth in said petition, the plaintiff is not entitled to partition of the real estate described

4. That there is a defect of parties defendant.

5. That this court has no jurisdiction to grant the incidental relief prayed for in the petition, to-wit: to grant the appointment of a master commissioner to make leases.

It is not necessary to consider the last ground, for since the filing of the demurrer, as appears from the supplemental petition, said property was destroyed, and there is no necessity for the appointment of a commissioner to make leases.

The sole question in this case is whether the plaintiff has the right of partition.

The plaintiff's title, as well as that of some of the answering defendants and cross-petitioners, who also pray for partition, rests upon the proper construction of the will of George Carlisle, from whom all title is derived.

It is not disputed that by the provisions of clause third of his will a life estate was given to his widow, Sarah B. Carlisle, who is charged with using the income from the property for her support as well as for the support and the maintenance of her five daughters, as long as they respectively remain unmarried, and the completion of the education of her youngest daughters. Sarah B. Carlisle, the life tenant, is dead; four of the daughters were married; some of them have died since; and one, Clara G. Carlisle, died unmarried.

The plaintiff's title, as well as that of certain of the defendants and cross-petitioners, depends upon the construction given clause fifth of the will. This reads:

"After the termination of the life estate herein given to my wife in the property at the southwest corner of Fourth and Walnut streets, said property is to pass to all of my children in equal proportions, for the term of their natural lives, and at the decease of my children, said property shall pass to the heirs of my children respectively in fee simple; it being my will that said property shall not be partitioned or sold until after the decease of the last survivor of my children, but be held entire, undivided and unsold until all of my children shall have deceased."

The plaintiff claims that upon the death of Clara G. Carlisle, who died in 1884, two years after the death of Sarah B. Carlisle, the original life tenant, she, as one of the six heirs of Clara G. Carlisle, whose heirs were the owners of one-seventh of said property, became vested in fee simple of one-forty-second interest in said estate.

Florence C. Kell, individually and as executrix of Wesley M. Cameron, denies the plaintiff's right to partition upon two grounds. The first is that if the plaintiff is vested with one-forty-second interest in fee simple in the premises described in plaintiff's petition, there is no right of partition under clause fifth of the will because it provides, "it being my will that said property shall not be partitioned or sold until after the decease of the last survivor of my children, but he held entire, undivided and unsold until all of my children shall have deceased"; and, second, that no fee simple title can vest in the plaintiff as one of the heirs of Clara G. Carlisle until all the children of George Carlisle shall have deceased, claiming that until that time it can not be known who the heirs of the deceased children are.

The plaintiff, in answer to Florence C. Kell's claim, contends that the provision in clause fifth of the will postponing partition until the death of all the children, is repugnant to the policy of the law inasmuch as it is a restraint of alienation and is an attempt to cut down the enjoyment of an estate in fee simple. To support this proposition, the case of *Anderson* v. *Cary,* 36 Ohio State, 506, is cited. In that case lands were devised as follows:

·"I give and bequeath the farm on which I now live of two hundred and eighty-five acres, .to my two sons, Thomas and Lincoln, upon the following conditions: 1. I direct that they, the said sons, shall not be allowed to sell and dispose of said farm until the expiration of ten years from the time my son, Charles Lincoln, arrives at full age, except to one another, nor shall either of my said sons have authority to mortgage or incumber said farm in any manner whatsoever except in the sale to one another as aforesaid."

The Supreme Court, speaking through one of the ablest judges of that bench, Judge McIlvaine, held that the devisees took a vested estate in fee simple, and that the restraint attempted to be imposed on power of the devisees to alien or encumber the estate was void as repugnant to the devise and contrary to public policy. At page 515, he says:

"By the policy of our laws it is of the very essence of an estate in fee simple absolute, that the owner, who is not under any personal disability imposed by law, may alien it or subject it to the payment of his debts at any and all times; and any attempt to evade or eliminate this element from a fee simple estate, either by deed or by will, must be declared void and of no force. *Hobbs* v. *Smith,* 15 O. S., 419."

The court further states that if there was a trust imposed by the will, or if a less estate than a fee simple estate had been devised, a different state of facts might arise, and he closes his opinion with the following forcible language:

"We fully admit that he (the testator) may restrain or limit its enjoyment by trusts, conditions or covenants, but we deny that he can take from a fee simple estate its inherent alienable quality, and still transfer it as a fee simple."

A reference to *Longsdorff Notes on Ohio Cases* will show with what approval this decision has met in other states and how frequently it has been cited.

Judge Rufus.B. Smith, in the case of *Wuest* v. *Wuest,* 8 N. P., 298, in construing a will in which the testator made a devise to his three children, giving to two of them one-fourth of the estate and to the third one-half of his estate, and then in the next clause of the will directed that "no sale, division

or partition of my estate shall take place before the expiration of ten years after my death; and I hereby authorize and empower my executor hereinafter named to manage and control my said estate from the time of my death until the same may be divided or sold as aforesaid, and he shall do all things necessary in managing the same as I now do," held that such provision was invalid. In deciding this case, Judge Smith quotes from *Gray on Restraints on the Alienation of Property,* Section 105, *et seq.* It is unnecessary to set out quotations from Professor Gray's authoritative work on this subject. Judge Smith, in his opinion, states that the trust which the testator endeavored to create in the executor by which the right to manage and control the property was taken away from the devisees of the fee simple is invalid, and that the devisees held the same free from any such trust; being the owners in fee simple, the provision of the will against a sale or partition of property is also void on the authority of *Anderson* v. *Carey,* 36 O. S., 506.

The Ohio rule is supported in the following cases, which are cited by counsel for plaintiff, to-wit: *Sears* v. *Choate,* 146 Mass., 395; *Dickson* v. *Dickson,* 70 N. C., 487; *Potter* v. *Couch,* 141 U. S., 296; *Jones* v. *Port Huron Engine Co.,* 171 Ill., 502, at 507.

Therefore, I am of the opinion that if the plaintiff in this case was the owner in fee simple of any part of the premises sought to be partitioned, the provision of the testator as set out at the end of clause fifth of his will, that the property should not be partitioned or sold until after the decease of the last survivor of his children, is void, and the demurrer on this ground is not well taken.

It is contended, however, that the fee simple in this case did not vest in the plaintiff or any of the defendants and cross-petitioners, who were the heirs of Clara G. Carlisle, because of the language used in said clause of the will:

"After the termination of the life estate herein given to my wife in the property on the southwest corner of Fourth and Walnut streets, said property is to pass to all of my children in equal proportions, for the term of their natural lives, and

at the decease of my children said property shall pass to the heirs of my children respectively in fee simple.''

Counsel for Florence C. Kell contends that the language ''and at the decease of my children said property shall pass to the heirs of my children respectively in fee simple,'' can only mean after the decease of all of his children.

This clause can not bear this construction for two reasons:

1. The language itself is not at all susceptible of such a construction. Counsel have overlooked the use of the word ''respectively.'' The testator does not say that at the decease of his children the property shall pass to the heirs of all his children, but, he expressly says, ''at the decease of my children, the property shall pass to the heirs of my said children respectively.'' This can only mean that upon the death of any one of his children, the interest of such deceased child shall pass to the heirs of such deceased child. This would be the natural construction to be given to this clause with the word ''respectively'' in it. If this were not so there would be no vesting of the estate until the death of all the children of the testator. If that had been the testator's intention he would have so drawn this clause of the will and would not have used the language which he did.

Owing to the importance of this controversy, and to the value of the property involved, and to the necessity of something being done with the property so as to prevent its waste, I have made a very careful search of the authorities on the subject and am of the opinion that the case of *Mehmert and Lindsay* v. *Gandolfo,* decided by our own circuit court in 6 C. C., 474, supports the construction herein given to the clause in question.

2. But even if the contention of counsel for Florence C. Kell is correct, that there could be no partition and that the language in clause fifth of his will must be given the construction which is sought to be placed thereon, still this being a proceeding in equity, and the plaintiff and some of the defendants and cross-petitioners asking for all necessary and proper relief, and the petition setting out facts showing that the property would be wasted if it were not sold, a court of

equity has full authority to order a sale of the premises and direct an investment of the proceeds of the sale, the income of which is to be paid to the devisees under the will in accordance with its provisions. And for this reason also the demurrer is not well taken.

However, in overruling this demurrer, I do not do so for this second reason, but I overrule the demurrer for the reason first given, namely, that the provision in clause fifth of the will, providing for postponement of partition until the death of all the children, is void under the authority of *Anderson* v. *Cary*, 36 Ohio State.

Nowhere in this will is there any trust and therefore *Anderson* v. *Cary*, *ubi supra*, can not be distinguished.

After Sarah B. Carlisle, the life tenant, died, each of her seven children had a life estate in this property, and, under clause fifth of the will, on the death of any one of these children, the heirs of such deceased child took a fee simple title. Therefore, when Clara G. Carlisle died unmarried and without children, her brothers and sisters became her heirs and each one of them was vested with the fee simple title in proper proportion, to-wit: One-sixth of her one-seventh share, that is, one-forty-second. And as plaintiff has a fee simple title she is entitled to partition, or in the event this can not be had, to a sale of the premises. Any interest that she may have in the premises, or that any of the defendants or cross-petitioners may have in the premises, as life tenants, can be protected by ordering an investment of the proceeds, income to be paid to the life tenant, and upon the decease of the life tenant the corpus to be distributed to the heirs, who will then be ascertained.

All of the parties are before the court in this proceeding. All of the heirs are represented by the respective life tenants. No heirs, although one may hereafter be born, is deprived of his right because he is virtually represented by his ancestor.

For these reasons, the demurrer must be overruled.